BURKHARDT v. BURKHARDT.

1. DIVORCE—CUSTODY OF CHILDREN—EVIDENCE AS TO FITNESS OF
MOTHER.

Record on appeal from order changing legal right to custody of
small boy of parties, who had been divorced when he was one
year of age, from mother to father *held*, to disclose no con-
vincing testimony showing her to have been an unfit person to
have custody and control of the child but that he was a totally
unfit person to have such custody and control at time of divorce
and has not improved.

2. PARENT AND CHILD—NATURAL RIGHT OF CUSTODY—JUDICIAL CON-
TROL.

Parents, whether rich or poor, have the natural right to the
custody of their children, subject to judicial control only when
the safety or interests of the child demand it (3 Comp. Laws
1929, § 12852).

3. DIVORCE—FORFEITURE OF PARENT'S RIGHT TO CUSTODY.

Father of small boy now in mother's custody *held*, to have for-
feited all parental rights to custody or control of his child,
where evidence shows that he had never seen the son after he
and his wife separated when child was one year old although
he lived in the same neighborhood, was in arrears in payment
of $3 weekly sum awarded to wife for support of the child
and people who had had actual custody of child were paying
all expenses of proceeding to get order awarding custody to
father.

4. SAME—CUSTODY OF CHILDREN—CHOICE OF YOUNG CHILD.

The choice of a four-year old child cannot be considered by the
court in matter of what disposition shall be made of its custody
on appeal from order on petition of father from whom mother
had obtained decree of divorce (3 Comp. Laws 1929, § 12852).

5. PARENT AND CHILD—MOTHER'S CUSTODY OF CHILDREN.

Evidence that mother was unfit to have custody of her four-year
old son or has relinquished such right by contract must be clear

and convincing in order to deprive her of his custody in view of statute giving her first claim to custody of children under the age of 12 years (3 Comp. Laws 1929, § 12852).

6. SAME—MOTHER'S CUSTODY OF CHILDREN—EVIDENCE.

Order modifying original decree so as to award legal custody of boy now four years old to father with actual custody in a man and wife with whom the mother had lodged the boy for nearly three years is vacated where it is shown that mother is in good health, is permanently employed, has the child with her in a suitable home, is a woman of good morals, is deeply interested in his welfare, has a mother's love for him, and her financially well-to-do relatives have offered to render any necessary assistance that the mother might be unable to provide.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted October 12, 1938. (Docket No. 70, Calendar No. 39,944.) Decided November 10, 1938.

Divorce proceedings between Marguerite Burkhardt and Robert Burkhardt. On petition of defendant for modification of decree as to custody of minor child and support thereof. Order modifying decree. Plaintiff appeals. Reversed.

*Crawford S. Reilley* (*M. David Orr*, of counsel), for plaintiff.

*Maurice C. Ransford*, for defendant.

CHANDLER, J. On September 10, 1934, the plaintiff was awarded a decree of divorce from defendant on the grounds of extreme cruelty by the circuit court for the county of Tuscola, in chancery. The court, finding that the plaintiff was a suitable person to have the care, custody and control of Robert William Burkhardt, the issue of the marriage, at that time one year of age, awarded her the custody of said child by its decree, and required defendant

to pay the sum of three dollars per week for the support of the said child.

Shortly after the divorce was granted, and about October 1, 1934, plaintiff, desiring to seek employment, entered into an agreement with Mr. and Mrs. Walter Legg, who live at Kingston, Tuscola county, near the home of plaintiff's parents, to take and care for her child and agreed to pay them the alimony she received from defendant for their efforts. There is some dispute between Mr. and Mrs. Legg and the plaintiff as to the exact nature of the agreement, the Leggs claiming that they were to have said child to rear as their own and that plaintiff said she would not take him from them. The Leggs took the child to their home where he remained until August 7, 1937. During the time he was in their custody, plaintiff paid Mrs. Legg the sum of $444, being the entire amount she received from defendant as alimony. Plaintiff also furnished during this period some clothing, and the Leggs provided wearing apparel which was necessary in addition to that furnished by plaintiff.

After October 1, 1934, plaintiff went to Detroit to work, first at housework and later in the factory of the Essex Wire Company where she remained until she was laid off in the summer of 1935. She then returned to her parent's home in Kingston for about four months, after which she again returned to Detroit and worked until June, 1937, with the exception of the summer of 1936 during which she resided with her parents. The testimony is conflicting as to how often plaintiff visited the child at the Legg home and how often she took the child to her own home. Plaintiff insisted that she visited the child as often as her work would permit or an average of 15 or 20 times a year. Mr. and Mrs.

Legg claimed that she visited the child or had him in her home but a few times.

On August 7, 1937, plaintiff called at the Legg home and took the boy to the home of her parents, ostensibly for a visit. However, she never returned him to Mrs. Legg. She later took him to Detroit where she secured employment as a housekeeper, receiving $6 per week and board for herself and son as compensation for her services. She was thus employed at the time of the hearing on defendant's petition for a modification of the divorce decree. The petition for modification of the decree, filed September 27, 1937, recited the following:

"That on the 1st day of October, 1934, the said Marguerite Burkhardt gave the actual custody and control of said minor child, Robert William Burkhardt, to Walter Legg and wife, of Kingston, Michigan, and that the said Walter Legg and wife took the child with the understanding that the child would never be removed from their home.

"In pursuance to this agreement Walter Legg and wife boarded and raised said child from the 1st day of October, 1934, until on or about the 7th day of August, 1937. That during the time said child was in their custody Walter Legg and wife have received the approximate sum of $444 from Marguerite Burkhardt to be used on behalf of the said minor, Robert William Burkhardt.   *   *   *

"That on the 7th day of August, 1937, Marguerite Burkhardt went to the home of Walter Legg and wife, at Kingston, Michigan, and obtained Robert William Burkhardt from their custody with the excuse that she desired to take the child away for a visit of from four days to a week. That since said date your petitioner and Walter Legg and wife have not seen said child, Robert William Burkhardt, and do not know his whereabouts at this time.   *   *   *

"That your petitioner is informed and verily believes that the said Marguerite Burkhardt is now living somewhere in Detroit, Michigan, and is employed at various jobs in an effort to earn a living for herself, but that such employment as is obtained is not of a permanent nature and that she does not receive enough money to support herself and child adequately.

"That because of the fact that your petitioner does not know the whereabouts of said child and is thereby deprived of his right to visit said child at all reasonable times and of the further fact that it is your petitioner's belief that the said Marguerite Burkhardt is unable to provide adequately for the care of Robert William Burkhardt, it is desired that said decree heretofore entered in this cause be now modified respecting the care, custody and support of said minor child, Robert William Burkhardt."

It is to be noted that the petition did not allege that plaintiff was not a suitable person to have the care, custody and control of the child. On October 7th, an amended petition was filed, the only material additional allegations being the following:

"That during all of the period of time from October 1, 1934, to August 7, 1937, Marguerite Burkhardt has resided for a great portion of such time in the village of Kingston and within a distance of 60 rods from the home of Walter Legg and wife. That during such period of time Marguerite Burkhardt has not shown a motherly affection toward Robert William Burkhardt and did not visit said child at the home of Walter Legg and wife except on infrequent occasions when she came to take the said Robert William Burkhardt away during the day. That as a result of such inattention the said Robert William Burkhardt did not consider Marguerite Burkhardt as his mother and did not exhibit any filial affection. * * *

"That your petitioner is informed and verily believes that during the past three years Marguerite Burkhardt has frequently visited beer gardens and has frequently become intoxicated. That your petitioner is informed and verily believes that during the last three years Marguerite Burkhardt has frequently attended the Shay Lake beer garden near Kingston, Michigan, and has frequently become intoxicated. That at such times and places the said Marguerite Burkhardt has associated with men and women of very questionable morals and that because of such associations and actions your petitioner verily believes that Marguerite Burkhardt is unfit to have the care, custody and control of Robert William Burkhardt.   *   *   *

"That because of the fact that your petitioner does not know the whereabouts of the said child, Robert William Burkhardt, and is thereby deprived of his right to visit said child at all reasonable times, and because of the further fact that it is your petitioner's belief that the said Marguerite Burkhardt is unfit to have the care, custody and control of Robert William Burkhardt; and that it is for the best interests of the said child, Robert William Burkhardt, to have him continue in the home of Walter Legg at Kingston, Michigan, it is desirable that the decree heretofore entered in this cause be now modified respecting the care, custody and control of said minor child, Robert William Burkhardt."

Upon the hearing of this petition for modification of the decree, the court made an order amending the original decree to read as follows:

"And it is further ordered, adjudged and decreed that the defendant, Robert Burkhardt, shall have the legal custody and control of said minor child, Robert William Burkhardt, but that said child shall be in the actual care and custody of Mr. and Mrs.

Walter Legg, of Kingston, Michigan, until the further order of this court.

"And it is further ordered, adjudged and decreed that the plaintiff, Marguerite Burkhardt, shall have the right to visit said child while he is in the actual custody of Walter Legg and wife at all reasonable times and periods. That during Christmas holidays of each year the said Marguerite Burkhardt shall be entitled to have said child in her custody for a period not to exceed three days. That during the summer school vacation period each year said Marguerite Burkhardt shall be entitled to have the custody of said minor child for a period not to exceed six weeks, provided, that during such period of time the said Marguerite Burkhardt is so situated that she will be able to provide personal attention to said child in her own home or living quarters. This provision shall be subject to change by the court as necessity requires.

"And it is further ordered, adjudged and decreed that the defendant, Robert Burkhardt, shall not be required to make further payments of alimony for the support of said minor child so long as said child remains in the actual custody of Walter Legg and wife of Kingston, Michigan."

This case is now before us on an appeal from the foregoing order modifying the original decree as aforesaid. The statements of reasons and grounds for appeal relied upon by appellant are numerous and it is unnecessary that they be set forth in detail in view of the conclusions we have reached.

The record contains a transcript of some of the testimony taken upon the divorce hearing. This testimony clearly shows that the plaintiff was a suitable and fit person to have the care, custody and control of the minor child, and that the defendant, petitioner here, was a totally unfit person to have the custody and control of said child. The testi-

mony taken upon the present hearing shows no improvement in his qualifications and his own attitude clearly indicates to us that his only interest is to be relieved from the payment of the paltry sum of $3 per week as provided in the original decree for the support and maintenance of said child. He admitted that he had never seen his son, or made any attempt to visit him since the separation although he has lived in the same neighborhood during all of this time. He also admitted that he has been delinquent in his alimony payments and was $75 in arrears at the time of this hearing.

Defendant and Mrs. Legg testified that this petition for modification was filed at the request of the Leggs and that they were paying all expenses incident to the proceeding.

A diligent search of the record fails to disclose any testimony tending to establish that plaintiff is morally unfit to have the care, custody and control of her child. In fact, the testimony of all of the numerous witnesses who were interrogated upon the subject was to the effect that she was a woman of good character and morals, and a fit person to have the care, custody and control of the child.

The testimony of Leslie Rossman, a regular Saturday night patron of the Shay Lake Tavern, a dance hall near Kingston, undoubtedly furnished the basis for the following finding made by the trial court:

"The facts concerning the mother, plaintiff herein, are not so easily determined. Still a young woman, with very active interest in 'boy friends' fond of the night life afforded by the beer gardens and dance halls of the Kingston section, her personality as she appeared to the court during the trial of this issue, is one not likely to be characterized by any deep heart urgings concerning her child.

"There is direct testimony of her intoxication. This she and her boy friend deny and others may say they did not see. She denies more than an occasional glass of beer. While the court gives weight to such charges it is not necessary to make a finding of this in disposition of the case."

This witness testified that he saw plaintiff intoxicated on several occasions at the tavern. His testimony is far from convincing to this court. It is contradictory and is not corroborated by that of his wife, who also was a regular patron of the place. It is directly contradicted by plaintiff and several other witnesses who accompanied her on a few occasions to the tavern. There was no testimony that plaintiff ever took an "active interest in boy friends," or to indicate that she was fond of the night life afforded by the dance halls of the Kingston section. The uncontradicted testimony of plaintiff was that she was never at the Shay Lake Tavern except on a very few occasions; that generally when there she drank pop or other soft drinks; that she would at times drink beer but never more than one bottle; and, that she was always accompanied by lady friends of good character when there. Her testimony is corroborated by that of those who accompanied her, that upon some of these visits to the tavern she saw Mr. Legg's daughter there, and that the people who patronized the place were of good character. Plaintiff also testified that she never was in a beer garden in Detroit or any other place than Shay Lake Tavern, with the exception of a visit to Van Wickles Tavern, the location of the latter not being indicated.

It is a well established principle of law, too well grounded to need citation of authority, that the parents, whether rich or poor, have the natural right to

the custody of their children, subject to judicial control only when the safety or interests of the child demand it. The rights of parents are entitled to great consideration and the courts should not deprive them of the custody of their children without very good cause.

The defendant by his conduct has forfeited any parental rights to the custody of his child, and his desires in the disposition of his petition are entitled to no consideration.

The choice of a child of the tender age of four years cannot be considered by the court in its determination of what disposition shall be made of the case. To deprive the mother of the custody and control of her son either on the ground that she is unfit or has relinquished her right by contract must be based upon evidence that is clear and convincing. The legislature recognized the right of the mother to the custody and control of children under the age of 12 years by enactment of 3 Comp. Laws 1929, § 12852 (Stat. Ann. § 25.311), which provides:

"That in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of twelve years, and the father of such children shall be entitled to the care and custody of all such children of the age of twelve years or over."

This court has had occasion to speak with reference to the custody of minor children under the foregoing statutory provision, and in *Greenman* v. *Greenman,* 249 Mich. 388, we said:

"It is the theory of the law in Michigan that a mother should have the care of children of tender age. It is provided by statute, 3 Comp. Laws 1915,

§ 11484,* that in case of the separation of parents, the mother shall have the custody of all children under 12 years of age. So in this case, if the mother is morally fit, she has the first claim to the child.''

In arriving at our conclusion, we do not wish to have our opinion considered as reflecting upon the fitness and suitability of the home of Mr. and Mrs. Legg for a child of the age of the one involved in the instant case. They are people of refinement and means and have grown fond of the child, and would without doubt furnish him with a suitable home where he would be reared in a proper atmosphere.

Plaintiff, as the record shows, is in good health, has been and now is permanently employed, and has the child with her in a suitable home. The evidence is most satisfactory to us that she is a woman of good morals, that she is deeply interested in the child's welfare, that she has a mother's love for the boy, and that there is no occasion to disturb the original decree which awarded to her the care, custody and control of him. In addition, she has a sister and brother-in-law, who are people of means, who are shown to be most suitable and proper people, well-to-do financially, and the brother-in-law testified that he was willing to and would render any necessary assistance in case plaintiff needed it for the support and care of said child, and that in case of her sickness or inability to provide for him he would take the child into his own home and care for him and enter into any agreement with reference thereto that the court might impose.

It necessarily follows that the order made upon this hearing modifying the original decree should

---

* 3 Comp. Laws 1915, § 11484 is the same as 3 Comp. Laws 1929, § 12852.—Reporter.

be and the same hereby is set aside, vacated and held for naught, the original decree being hereby affirmed. Costs are awarded to plaintiff.

WIEST, C. J., and BUSHNELL, SHARPE, NORTH, and McALLISTER, JJ., concurred. BUTZEL and POTTER, JJ., did not sit.