LIEBERT *v.* DERSE.

1. HABEAS CORPUS—MINOR CHILDREN—QUESTIONS REVIEWABLE.
    In reviewing habeas corpus proceedings involving the custody of a minor child, the Supreme Court examines the record to ascertain if the welfare and best interests of the child have been protected and the legal rights of the parties properly determined.

2. ADOPTION—RIGHTS OF PARENTS—STATUTES.
    The legal parent of an adopted child is entitled to all the rights of a parent under the probate code (Act No. 288, chap. 10, § 5, Pub. Acts 1939).

3. PARENT AND CHILD—SURVIVOR OF ADOPTING PARENTS—CUSTODY OF CHILD.
    In the absence of a showing that he is not a suitable person to have the custody of an adopted child, a widower, who with his wife had adopted a child, is, as her survivor, legally entitled to the child's custody under the probate code (Act No. 288, chap. 3, § 6, Pub. Acts 1939).

4. SAME—CUSTODY OF CHILD—BEST INTEREST OF CHILD.
    In determining who shall have custody of a minor child, the best interest of the child is of paramount importance and it is the judicial duty of a court to safeguard the child's welfare and care but the parent of the child may not be deprived of his custody except it be shown that the parent was an unsuitable person to have such custody (Act No. 288, chap. 3, § 6, Pub. Acts 1939).

5. SAME—CUSTODY OF ADOPTED CHILD—WISHES OF CHILD.
    The custody of a six-year-old boy who had been placed with the sister of plaintiff's first wife and her husband by the adopting father upon accidental death of his wife when child was about two years of age is awarded to plaintiff who has paid for child's keep and upon remarriage has established a suitable home and is not shown to be an unfit person to have

his .custody, notwithstanding the child prefers to stay with foster-mother's sister, since the adopting father is legally entitled to the child's custody (Act No. 288, chap. 3, § 6, chap. 10, § 5, Pub. Acts 1939).

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted June 20, 1944. (Calendar No. 42,736.) Decided September 11, 1944.

Petition by Gustave H. Liebert for writ of habeas corpus directed to Francis Derse and wife to determine right to custody of plaintiff's adopted minor child, Karl Francis Liebert. Petition dismissed. Petitioner appeals. Reversed and remanded for entry of order granting plaintiff's petition.

*Allaben & Wiarda* (*William J. Heyns*, of counsel), for plaintiff.

*J. Donald Murphy*, for defendants.

STARR, J. Upon plaintiff's petition filed February 5, 1944, the trial court issued writ of habeas corpus for the purpose of inquiring into defendants' alleged unlawful detention of plaintiff's legally-adopted six-year-old son, Karl Francis Liebert. Defendants answered denying plaintiff's right to the custody of said child. The matter was brought on for hearing, testimony was taken, and the trial court entered an order dismissing plaintiff's petition and granting defendants custody of the child. Having obtained leave, plaintiff appeals from such order. In reviewing habeas corpus proceedings involving the custody of a minor child, we examine the record to ascertain if the welfare and best interests of the child have been protected and the legal rights of the parties properly determined.

The boy, Karl Francis, was born June 14, 1937, and when about three months old was legally adopted by plaintiff and his former wife. The order confirming such adoption was entered in the probate court for Calhoun county September 21, 1937. Upon the accidental death of his wife in 1939, plaintiff placed the boy in defendants' care, but there was no agreement that they should have his custody permanently. Defendant Flossie Derse, a sister of plaintiff's deceased wife, testified in part:

" I realize Mr. Liebert (plaintiff) is the legal parent and guardian the same as a father. It wasn't our intention to keep him (Karl Francis) right from the first. * * *

"*Q.* * * * When did you decide that Karl should stay with you?

"*A.* When he showed a preference and objected to going."

It appears that at the same time plaintiff placed the boy Karl Francis in defendants' care, he also placed in their care his eight-year-old daughter by a previous marriage. He visited the children weekly and paid defendants $14 a week for their support and care. After his daughter returned to his home in June, 1943, he paid defendants $7 a week for the boy's care. In March, 1943, plaintiff remarried and established a home in Grand Rapids. He testified in part:

"My daughter * * * came to live with us on or about June 14th. At that time we had the intention of taking Karl but we were sort of talked into an idea of leaving Karl (with defendants) until school started. I wrote a letter asking that they have Karl ready to return with me on August 29 (1943), and when I went to get my boy I was refused him.

"I made full payment of the board up to August 29th. * * *

"I consider the boy to be my own child and plan to be a father to him in every respect. I feel that our family environment will be desirable for the child."

In his opinion the trial court said in part:

"There is a pleasant aspect to this case presented through the fact that I have observed no attempt on the part of the witnesses on either side to discolor or misrepresent the facts.   *   *   *

"*On the part of the plaintiff it appears that he has a good home in Grand Rapids and there is nothing in the proof from which any unfavorable inference can be drawn against the plaintiff or his present wife. And the interest which he manifested at this time in the child which he adopted   *   *   *   is a commendable one.*   *   *   *

"It is quite possible that in time the child might react favorably to a change of custody. But as the matter stands at the present time, I do not feel that I would be justified in disturbing the wholesome and happy surroundings now existing.

"It is the order of this court that for the best interest of the child and *without any reflections upon the plaintiff, the petition should be denied.*"

The testimony indicates that plaintiff and his present wife are substantial and respectable people. He is 43 years old, is regularly employed, and says that he is able to provide for the boy adequately. He owns and maintains his home, equipped with modern conveniences and located near a city park. He showed his affection for and interest in the boy by visiting him regularly while he was in defendants' care and in paying for his support for several years. His wife said that they had redecorated a room in their home and made it into a boy's room for Karl.

The testimony likewise indicates that defendants are respectable people and that they gave plaintiff's

children good care.   Defendant Francis Derse, who
is 54 years old, has five grown children, all married.
He was obliged to give up factory work because af-
flicted with arthritis.    He and his wife, Flossie
Derse, live in a four-room, unfinished house on a
farm about a mile from White Cloud, where the boy
Karl Francis attended school.    Mrs. Derse said,
''We do not have very many neighbors, but we have
one colored family living across the road from us.''

Defendants admit receiving payment from plain-
tiff for their support and care of both the children,
and they base their refusal to surrender the boy on
the ground that he prefers to remain with them.
They make no showing whatever that plaintiff is not
a proper and suitable person to have the boy's care
and custody.    Defendant Francis Derse said, ''I
have nothing that I feel about the character of Mr.
Liebert (plaintiff) that isn't proper.''    A witness
called by defendants said, ''I do not have a thing to
say against Mr. Liebert.''    Defendant Flossie Derse
testified :

''I have no complaints to make about any person
or place.   Mr. Liebert was faithful in his payments
until August 29, 1943.   I have never told Karl that
he must go.   I have told him that his daddy would be
good to him and that he would have a nice home and
they like him very much and are very nice people.''

The question presented on this appeal is whether
or not the trial court erred in dismissing plaintiff's
petition and in granting defendants custody of the
child.    As the legal parent of the adopted child,
plaintiff is entitled to all the rights of a parent under
the probate code, Act No. 288, chap. 10, § 5, Pub. Acts
1939 (Comp. Laws Supp. 1940, § 16289–10 [5], Stat.
Ann. 1943 Rev. § 27.3178 [545]), which provides in
part:

"*The person or persons so adopting such child shall thereupon stand in the place of a parent or parents to such child in law, and be liable to all the duties and entitled to all the rights of parents thereto,* and such child shall thereupon become and be an heir at law of such person or persons, the same as if he or she were in fact the child of such person or persons.*"

See *Greenman* v. *Gillerman's Estate,* 188 Mich. 74.

In the absence of a showing that he is not a suitable person to have the custody of the child, plaintiff, as the surviving parent, is legally entitled to his custody under the probate code, Act No. 288, chap. 3, § 6, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–3 [6], Stat. Ann. 1943 Rev. § 27.3178 [206]), which provides in part:

"The father or mother of the minor, and if 1 of them be deceased, *then the survivor thereof, being respectively competent to transact their own business, and otherwise suitable,* shall be entitled to the custody of the person of the minor and to the care of his education.*"

We recognize the long-established rule that the best interest of the child is of paramount importance, *Martin* v. *Benzie Circuit Judge,* 200 Mich. 549; *In re Gould,* 174 Mich. 663, and that it is our judicial duty to safeguard his welfare and care, *Bird* v. *Bird,* 308 Mich. 230. However, we never have interpreted such rule so as to deprive a parent of the custody of his or her child, unless it was shown that the parent was an unsuitable person to have such custody. It should be borne in mind that, in the present case, there was no showing that plaintiff was not a suitable and proper person to have the custody of his son.

In *Partch* v. *Baird,* 227 Mich. 660 (affirmed on rehearing in 230 Mich. 615), plaintiff's wife, before her

death, had expressed a wish that their infant son remain with defendant, her mother. Her wish was carried out, and plaintiff left the child with defendant. When the boy was about six years old, plaintiff, having remarried and established his own home, began habeas corpus proceedings to obtain his custody. The trial court determined that the boy should remain with the grandmother. In reversing the trial court and awarding the father custody, we said in part, pp. 665, 666:

"Plaintiff being now in a situation to take care of his boy, he wants him with him. Plaintiff's wife shares his desire and is willing that the boy should be brought to her home and is willing to mother him. * * *

"The testimony convinces us that the father is fond of his boy and is now in a position to take him into his own home, care for him and look after his education. During the years the boy lived with defendant the father visited him on an average of once in two weeks. * * *

"He (plaintiff) has paid defendant $2,557 for the care and attention which she has bestowed upon him. Defendant does not think plaintiff's home is as suitable as hers, but we think no objection can be urged against the father's home. * * *

"*If the father be a suitable person, the statute gives him the right to the custody of his minor son. 3 Comp. Laws 1915, § 13955* (substantially the same as chapter 3, § 6, of the probate code, hereinbefore quoted). *The showing made by defendant is not sufficient to establish the fact that plaintiff (father) is an unsuitable person, and the trial court did not find that he was unsuitable.*

"The judgment of the trial court must be reversed and one entered giving plaintiff the custody of his boy."

In the case of *In re Goldinger,* 207 Mich. 99, the plaintiff's wife had died and their infant child was

placed in the care of defendant, the deceased wife's mother. About three years later plaintiff, having remarried, began habeas corpus proceedings to obtain custody of the child. The trial court entered an order giving the grandmother custody. On appeal we reversed such order and, after recognizing the rule that our first consideration was the best interest of the child, we said, pp. 104, 106:

"We are unable to find, however, that this court has ever said, or interpreted the rule to mean, that a father would be deprived of the possession of his child where it clearly appears that he is a man of good habits, honest, and well able to provide for his child. * * * He never relinquished the right of the custody of his child, and it was only a short period after his second marriage that he requested its possession. It may be true that the respondent (grandmother) is as much attached to the child as the parent and that she is as suitable to have its custody and as able to provide and care for it, but nevertheless, *unless it clearly appears that the parent is for some reason unfit to have its possession, the rule is well established in our law that the parent is entitled to the possession of his child against all others.* * * *

"*The respondent having failed to show that the father * * * is not a fit person to have the care and custody of his son, it follows that the order made by the learned trial judge must be vacated and an order entered awarding the permanent custody of his child to the petitioner.*"

In the case of *In re Adams*, 214 Mich. 199, the plaintiff father began habeas corpus proceedings *in this court* to obtain the custody of his infant daughter. We declined to assume original jurisdiction, as another proceeding involving the custody of the child was pending in circuit court. However, in

recognizing the father's right to the child, we said, p. 204:

"The law makes him her guardian by nature and for nurture, *prima facie entitled to her care and custody.* Bearing in mind also the child's best interests, the courts will primarily 'feel bound to restore the custody where the law places it, with the father, unless in a clear and strong case of unfitness on his part to have such custody.' "

In the case of *Chevlin* v. *Tarner,* 274 Mich. 249, plaintiff began habeas corpus proceedings against defendants, her father and mother, to obtain possession of her eight-year-old son. It appeared that she had been divorced and the child left in the care of defendants, who refused to surrender him. Plaintiff remarried and demanded possession of her child. In affirming an order awarding plaintiff custody, we said, p. 251:

"The mother seems now to be established in a suitable home and to be capable of taking and caring for her son. * * * She has never yielded her legal right to the custody of this child. * * *
"That the child has been well cared for in the home of the grandparents cannot be questioned. * * *. *Primarily the mother is legally entitled to the custody of her eight-year-old child.* * * *
Relying much on the facts and reasoning in *Re Goldinger,* 207 Mich. 99, the circuit judge found that the mother was entitled to the custody of this child."

In the present case defendants base their refusal to give plaintiff custody of his son solely on the ground that he prefers to remain with them. They make no material charges or accusations against either plaintiff or his present wife. They make no showing whatever that plaintiff is not a suitable

and proper person to have his son's custody. When placed on the witness stand, the boy said, in substance, that he thought his father would be good to him but that he preferred to stay with defendants. Such preference was the natural desire of a small child to remain in the environment to which he had become accustomed. While his wishes are entitled to consideration, it is clear that a six-year-old child is hardly competent to determine what environment and whose custody are best for his present and future welfare. Furthermore, his present wish to remain with defendants cannot overrule the established legal right of his father to his custody. In *Smith* v. *Kiel,* 150 Mich. 417, the father began habeas corpus proceedings against the grandparents to obtain custody of his daughter, who was about nine years old. In affirming the trial court's award of custody to the father, we said in part:

"The child gave no testimony, but counsel for defendants requested the court to question her. *This the court declined to do, saying that her wishes could not be permitted to overrule legal rights.* From this and the language of the opinion which was filed, it is made clear that, having become convinced that both the father and the grandparents were suitable persons to have the care of the child, *decision was based upon the idea of the superior legal right of the parent.*"

We conclude that in the absence of a showing that plaintiff is not a suitable person to have the custody of his son, he is legally entitled to such custody. Furthermore, under all the facts and circumstances shown by the record, we believe it is for the boy's best interest that he be returned to his father.

The factual situations considered in the several authorities cited by defendants distinguish them from the present case. Other questions raised by defendants do not require consideration.

The order of the trial court dismissing plaintiff's petition is vacated and set aside. The case is remanded with direction to enter an order granting plaintiff's petition and awarding him custody of the child. Plaintiff shall recover costs.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.