*In re* ANJOSKI

Docket No. 283406. Submitted December 10, 2008, at Detroit. Decided
March 19, 2009, at 9:10 a.m.

Amy Kane brought a paternity action against Timothy Anjoski in the
Wayne Circuit Court, Family Division, regarding a minor child
born out of wedlock. The defendant admitted paternity and a
judgment of filiation was entered granting the plaintiff sole legal
and physical custody and providing parenting time for the defen-
dant. Following the defendant's motion for a change of custody,
both parties were awarded joint legal custody, while physical
custody remained with the plaintiff and parenting time was
granted to the defendant. The defendant again moved for a change
of custody, alleging, in part, that the plaintiff used illegal drugs and
failed to provide the child with proper clothing and hygiene.
Following hearings and further motions, the defendant was
awarded temporary sole physical custody and the parties were
awarded joint legal custody. A guardian ad litem was also ap-
pointed for the child. The guardian ad litem testified that the child
was in an established custodial environment with the defendant
and that he had concerns regarding the plaintiff's use of drugs. He
recommended that physical custody of the child remain with the
defendant. The parties consented to the recommendation, and the
court entered an order granting the defendant sole physical
custody and joint legal custody to the parties. The defendant
thereafter died and his widow, Lisa Anjoski, who had not become
the child's guardian or otherwise establish any legal connection to
the child, filed a complaint for custody, but dismissed it when the
court, Kathleen M. McCarthy, J., determined that Lisa did not
have standing. The plaintiff, citing the defendant's death as a
change of circumstances, moved for a change of custody. The court
denied the motion, stating that although the court recognized the
presumption provided in MCL 722.25 (that it is in the child's best
interests to be placed with the parent), it did not want to disrupt
the child's established custodial environment until an evidentiary
hearing regarding the plaintiff's parental fitness could be con-
ducted. The plaintiff moved for rehearing, and Lisa filed a motion
to intervene. Following a hearing, the court reappointed the child's
guardian ad litem, directing him to assess the situation, and

determined that the established custodial environment should not be changed until a hearing regarding the best interests of the child was held. The court denied Lisa's motion to intervene, but noted that the court could place the child with a third party if, following the best interests hearing, it determined that such an action would be in the child's best interests. The court entered a supplemental order keeping the child with Lisa pending the evidentiary hearing to determine the plaintiff's parental fitness. The plaintiff appealed the supplemental order.

The Court of Appeals *held*:

1. The trial court properly determined that Lisa is a third party who does not have standing to initiate a custody dispute or intervene in the paternity action. Neither of the circumstances provided in MCL 722.26b and MCL 722.26c(1)(b) that allow third parties standing applies in this case.

2. The trial court did not commit clear legal error requiring reversal or abuse its discretion by permitting the child to remain with Lisa under the circumstances of this case.

3. The parental presumption established in MCL 722.25 generally prevails over the presumption provided in MCL 722.27(1)(c) in favor of maintaining a child's established custodial environment. However, in custody disputes between an unfit parent and a third-party custodian, the unfit parent, although entitled to some deference, is not entitled to the parental presumption. When, as in this case, there is evidence on the record that raises serious concerns regarding the parent's current ability to care for the safety and welfare of the child and suggests that the parent is unfit, the trial court must first make a preliminary finding of parental fitness before proceeding further. Once this preliminary finding is made, the court may proceed to determine the proper burden of persuasion to be applied at the best interests hearing. During these preliminary steps, the child need not be taken from an established custodial environment and returned to the allegedly unfit noncustodial parent.

4. It was appropriate under the facts of this case for the trial court to maintain the status quo while it made its preliminary findings, including first determining the plaintiff's parental fitness, next determining which burden of persuasion would be applicable, and finally conducting the evidentiary hearing regarding the child's best interests.

5. The focus of a parental fitness inquiry must be on a parent's abilities relative to the child's needs. A parent should be deemed unfit only after an inquiry shows, by a preponderance of the

evidence, that the parent is, in fact, currently unfit. A finding of parental unfitness may be reviewed at a later time.

6. A third party who lacks standing may not initiate a custody dispute. However, once a custody dispute is properly initiated, it is within the court's authority to award custody of the child to a third party pursuant to MCL 722.27(1)(a). The phrase "to others" in MCL 722.27(1)(a) does not mean "to others with standing."

7. The plaintiff was not denied her constitutional right to the care, custody, and control of the child under the facts of this case.

Affirmed and remanded for further proceedings.

1. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD — PRESUMPTION IN FAVOR OF CUSTODY BY PARENTS — PRESUMPTION FAVORING MAINTAINING ESTABLISHED CUSTODIAL ENVIRONMENT — PARENTAL FITNESS.

The presumption that it is in the best interest of a child whose custody is disputed by a parent and an agency or a third party to award custody to the parent generally prevails over the presumption in favor of maintaining a child's established custodial environment; the parental preference presumption is only afforded to fit parents; a court does not abuse its discretion in maintaining a child's established custodial environment with a third party while the court makes preliminary findings regarding the parental fitness of a noncustodial parent, determines which burden of persuasion is applicable, and conducts the evidentiary hearing regarding the child's best interests (MCL 722.25, 722.27[1][c]).

2. PARENT AND CHILD — CHILD CUSTODY — THIRD PARTIES IN CHILD CUSTODY DISPUTES — WORDS AND PHRASES — AWARDING CUSTODY TO OTHERS.

A third party who lacks standing may not initiate a child custody dispute; once a child custody dispute is properly initiated, a court may award custody to a third party; the phrase "to others" in the statute providing that in a custody dispute the court may award custody of the child to one or more of the parties involved or to others does not mean "to others with standing" (MCL 722.27[1][a]).

Free Legal Aid Clinic, Inc. (by *Nathan A. White)*, for Amy Kane.

Michigan Children's Law Center (by *Frederick H. Gruber)*, Guardian Ad Litem for the minor child.

Before: SERVITTO, P.J., and OWENS and K. F. KELLY, JJ.

K. F. KELLY, J. Plaintiff appeals as of right a supplemental order of the family division of the circuit court permitting the minor child of the parties to remain in the established custodial environment of defendant's home with defendant's widow, Lisa Anjoski (Lisa), pending an evidentiary hearing. We affirm. This matter requires us to address (1) whether a third party with no legal connection to the child at issue has standing to initiate a child custody dispute, (2) whether a trial court, in recognition of parents' fundamental liberty interest in childrearing and the parental presumption under MCL 722.25, must immediately return the child to a noncustodial parent upon the death of a custodial parent when the record contains legitimate allegations that the noncustodial parent is unfit, and (3) whether a trial court has the authority to award custody to a third party without standing pursuant to MCL 722.27(1)(a). We hold that a third party lacks standing if it does not meet one of the statutory standing requirements in the Child Custody Act, MCL 722.21 *et seq.* We further hold that a trial court, in considering a motion to modify a custody order in situations where sufficient legitimate and compelling indicia exist on the record indicating that a noncustodial parent is currently unfit, must first make a finding of parental fitness before determining the burden of persuasion to be applied and conducting an evidentiary hearing. Lastly, we hold that the plain language of MCL 722.27(1)(a) permits a trial court to award custody to a third party who lacks standing.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant conceived a child out of wedlock. The minor child was born in 2003. Plaintiff

initiated a paternity suit against defendant, who admitted paternity in November 2004. The judgment of filiation indicated that plaintiff would maintain sole legal and physical custody of the minor child and provided parenting time for defendant. Defendant then moved for a change of custody in December 2005. Consequently, the trial court amended the custody award in May 2006, awarding plaintiff and defendant joint legal custody, with physical custody remaining with plaintiff and parenting time given to defendant.

On July 6, 2006, defendant moved for a change of custody on the basis that plaintiff allegedly failed to follow the parenting time schedule, failed to provide proper clothing and hygiene to the minor child, allowed the minor child's medical insurance to lapse, used marijuana and crack cocaine, lived with an unstable boyfriend, and transported the minor child in her car without a child restraint. Defendant also alleged that he smelled crack cocaine emanating from plaintiff's car when plaintiff dropped the minor child off, that plaintiff had rarely visited the minor child when the child was in the hospital, and that plaintiff dressed the minor child in clothing inappropriate for the weather.

The trial court scheduled a hearing on defendant's motion for September 5, 2006. Defendant refiled the identical motion on August 30, 2006. The September 5th hearing was adjourned, however, because plaintiff was in the hospital, allegedly for treatment for drug abuse, and another hearing was scheduled for September 15th.[1] Defendant then filed an amended motion for a change of custody on September 8, 2006. On October 10, 2006, the trial court granted defendant's motion,

---

[1] Although the trial court's docket entries indicate that an order was entered on September 15, 2006, it appears from the record that the matter was adjourned to October 10, 2006.

awarding defendant temporary sole physical custody, with joint legal custody for both plaintiff and defendant, and scheduled another hearing for January 9, 2007. The minor child then began living with defendant and his wife, Lisa. Plaintiff was allowed reasonable parenting time but only on the condition that any parenting time be supervised. At the January 9, 2007, hearing the trial court appointed a guardian ad litem for the minor child, ordered supervised parenting time for plaintiff to take place at HelpSource,[2] and scheduled an evidentiary hearing for April 4, 2007.

At the April 4, 2007, hearing, the guardian ad litem testified that the minor child was in an established custodial environment with defendant. The guardian ad litem further indicated that he had concerns regarding plaintiff's drug use and that he had recommended drug screening and treatment. Ultimately, the guardian ad litem recommended that the minor child should remain in defendant's physical custody. Both plaintiff and defendant consented to this recommendation. Consequently, the trial court entered an order on May 2, 2007, that summarized the parties' agreement, under which the parties maintained joint legal custody while defendant maintained sole physical custody. The order required both plaintiff and defendant to undergo random, but weekly, drug screenings and continued plaintiff's supervised parenting time, which was to gradually increase depending on plaintiff's successful and timely completion of substance abuse counseling and negative drug screens. Lisa, however, did not become the minor child's guardian or otherwise establish any legal connection to the minor child.

---

[2] In 2006, HelpSource was a private nonprofit agency offering a variety of services, including, but not limited to, supervised parenting time and assistance with substance abuse.

In August 2007 defendant died. Lisa filed a complaint for custody of the minor child, but dismissed it after the trial court determined that she did not have standing. Plaintiff then moved for a change of custody, citing defendant's death as a change of circumstances. On October 19, 2007, the trial court denied plaintiff's motion and "continued [its] current orders," which included supervised parenting time, reasoning on the record that, "if an established custodial environment is in place for a minor child, this court shall not disrupt that custodial environment until an evidentiary hearing has been held." In coming to this determination, however, the trial court recognized the parental presumption under MCL 722.25 that it is in the child's best interests to be placed with the parent and also noted that it did not wish to delay the matter in any way. The trial court stated:

> [Pursuant to MCL 722.25, Lisa] would have a burden by clear and convincing evidence in this case. Unless Ms. Kane is deemed unfit. And as a result, I am reappointing [the guardian ad litem] on behalf of the child to go to reinvestigate the home environments for this child . . . .

Thus, the minor child remained with Lisa pending an evidentiary hearing on November 20, 2007, which was as soon as the trial court's docket would permit.

Plaintiff moved for rehearing on November 2, 2007, alleging that the trial court erred by ordering a best interests hearing instead of immediately returning the minor child to plaintiff. In response, Lisa filed a brief opposing plaintiff's motion and also filed a motion to intervene. The trial court heard plaintiff's motion on November 20, 2007. At that hearing, the trial court again recognized the statutory presumption in favor of a parent and also recognized the competing presumption, under MCL 722.27(1)(c), in favor of maintaining

the established custodial environment. The trial court then reiterated its previous statement regarding the applicable burden of persuasion when the parent is deemed unfit. The trial court stated:

> [I]n a child custody dispute between a natural parent who does not have the status of a fit parent and a third party custodian, the trial court is not required to apply the statutory presumptions in favor of the parent. In this situation, the natural parent must show, by a preponderance of the evidence, that a change in the child's established custodial environment is in the child's best interest.

The trial court then took note of the factual history leading up to the present dispute, including plaintiff's consistent drug abuse, residence with an abusive boyfriend, and sporadic employment record. The court also noted that even when the minor child was in plaintiff's physical custody, the minor child nonetheless lived almost exclusively with defendant because plaintiff left the minor child with defendant, and that the minor child, when living with plaintiff, was neglected and lived in deplorable conditions. Because of these facts, the trial court deemed it necessary to reappoint the minor child's guardian ad litem to "properly assess the situation." As a result, the trial court concluded that it could not change the minor child's established custodial environment until a best interests evidentiary hearing was held. Further, with respect to Lisa's motion to intervene, the court noted that caselaw does not permit a third party to intervene, but "that does not preclude the court from deciding, after a best interest hearing, that it is in the child's best interest to be placed with a third party."[3]

---

[3] Plaintiff sought leave to appeal the trial court's November 20, 2007, determination on plaintiff's motion for rehearing, which this Court

On December 11, 2007, the day of the rescheduled best interests hearing, the parties moved for an adjournment in order to collect more information concerning the minor child's progress at school. In addition, plaintiff had tested positive for cocaine and the guardian ad litem requested more time for a hair follicle test. Accordingly, the trial court adjourned the hearing to February 14, 2007.

The trial court then issued a supplemental order on January 11, 2008, directing that the minor child remain with Lisa pending the evidentiary hearing and that the minor child receive, as necessary, counseling to deal with the loss of her father. The order also required plaintiff to reenroll in a drug abuse treatment program, attend weekly appointments with her case manager and monthly appointments with her psychiatrist, and allotted plaintiff additional parenting time over the holidays as long as plaintiff remained at her father's house. Plaintiff now appeals this supplemental order. The trial court stayed the evidentiary hearing scheduled for February 14, 2008, pending this Court's disposition of the matter.

## II. STANDARDS OF REVIEW

Three standards of review are relevant to child custody appeals. *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). "This Court must affirm all custody orders unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Findings of fact should be affirmed "unless the evidence

denied. *Kane v Anjoski*, unpublished order of the Court of Appeals, entered December 7, 2007 (Docket No. 282246).

clearly preponderates in the opposite direction." *Phillips, supra* at 20. The trial court's discretionary decisions, such as its custody awards, are reviewed for an abuse of discretion. *Id.* Lastly, "[q]uestions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003) (quotation marks and citations omitted).

Further, we review matters of statutory construction de novo. "The primary goal of judicial interpretation . . . is to ascertain and give effect to the intent of the Legislature." *Taylor v Currie*, 277 Mich App 85, 94; 743 NW2d 571 (2007) (quotation marks and citation omitted). "The first criterion in determining . . . intent is the specific language of the statute. . . . If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted . . . ." *Id.* (quotation marks and citation omitted).

### III. THIRD-PARTY STANDING

Plaintiff first argues that Lisa is a third party who does not have standing to initiate a custody dispute or intervene in a paternity action. We agree.

Generally, a party has standing if it has " 'some real interest in the cause of action, . . . or interest in the subject matter of the controversy.' " *Bowie v Arder*, 441 Mich 23, 42-43; 490 NW2d 568 (1992), quoting 59 Am Jur 2d, Parties, § 30, p 414. However, this concept is not given such a broad application in the context of child custody disputes involving third parties, or " 'any individual other than a parent,' " *Heltzel v Heltzel*, 248 Mich App 1, 31 n 20; 638 NW2d 123 (2001) (citation omitted). For example, a third party does not have standing by virtue of the fact that he or she resides with

the child and has a "personal stake" in the outcome of the litigation. *Bowie, supra* at 42; see also *In re Clausen*, 442 Mich 648, 678-682; 502 NW2d 649 (1993). Nor may a third party " 'create a custody dispute by simply filing a complaint in circuit court alleging that giving legal custody to the third party is in the [child's] best interests . . . .' " *Heltzel, supra* at 28-29 (citation omitted); *Terry v Affum (On Remand)*, 237 Mich App 522, 529; 603 NW2d 788 (1999). Rather, under the Child Custody Act the Legislature has limited standing for third parties to two circumstances. Pursuant to MCL 722.26b, third-party guardians have standing to bring an action for the custody of a child. That provision provides, in part:

> (1) Except as otherwise provided in subsection (2), a guardian or limited guardian of a child has standing to bring an action for custody of the child as provided in this act.

> (2) A limited guardian of a child does not have standing to bring an action for custody of the child if the parent or parents of the child have substantially complied with a limited guardianship placement plan regarding the child . . . .

A third party also has standing under MCL 722.26c(1)(b), if the third party meets all the following conditions:

> (*i*) The child's biological parents have never been married to one another.

> (*ii*) The child's parent who has custody of the child dies or is missing and the other parent has not been granted legal custody under court order.

> (*iii*) The third person is related to the child within the fifth degree by marriage, blood, or adoption.

Neither of these provisions applies to the instant case. Lisa never became a guardian of the minor child

and, therefore, MCL 722.26b does not confer standing on Lisa. Further, standing is precluded under MCL 722.26c(1)(b). Even though plaintiff and defendant were never married, MCL 722.26c(1)(b)(*i*), and Lisa is related to the minor child through her marriage to defendant, MCL 722.26c(1)(b)(*iii*), plaintiff shared legal custody with defendant at the time of defendant's death, MCL 722.26c(1)(b)(*ii*). Thus, not all three requirements are met to create third-party standing. If a third party does not fit within one of the two statutory standing requirements, the third party lacks standing to create a custody dispute.[4] Lisa meets none of the statutory standing requirements, and both the minor child's residence with Lisa after defendant's death and Lisa's petition for custody are insufficient to create standing. Therefore, the trial court properly concluded that Lisa did not have standing to file a petition for custody.[5]

---

[4] We also note that a party moving to intervene in litigation, as Lisa did here, must demonstrate that the party has standing to assert his or her claims. *Karrip v Cannon Twp*, 115 Mich App 726, 732; 321 NW2d 690 (1982). Because Lisa did not have standing, the trial court properly denied Lisa's motion to intervene.

[5] Although our conclusion is in agreement with plaintiff's position, we must note that we agree with plaintiff only to the extent that a third party does not have standing to create a custody dispute, or to intervene, in the absence of satisfying either of the statutory standing requirements. We disagree with plaintiff's contention that the trial court abused its discretion by allowing a third party without standing to "create a custody dispute." This assertion is factually inaccurate. Our review of the record shows that the trial court did not permit a third party without standing to petition for custody because it explicitly concluded that Lisa lacked standing. To the contrary, this matter was initiated on plaintiff's own petition. For this same reason, we find no merit in plaintiff's related argument that the trial court's allegedly improper course of action is tantamount to terminating plaintiff's parental rights. Assuming, for the sake of argument, that the trial court does award Lisa custody following any further hearings, plaintiff's parental rights will not be terminated and plaintiff may move for another change of custody.

IV. INTERIM CUSTODY AWARD

Plaintiff next contends that the trial court clearly erred and abused its discretion when it temporarily awarded custody to Lisa pending a best interests evidentiary hearing. Specifically, plaintiff asserts that the court erred because it modified the child custody order by awarding Lisa physical custody before holding an evidentiary hearing pursuant to MCL 722.25(1), which creates a presumption in favor of the natural mother, plaintiff. According to plaintiff, the minor child should have been automatically returned to plaintiff's physical custody upon defendant's death. We cannot conclude under the circumstances of this case that the trial court committed clear error requiring reversal or that it abused its discretion by permitting the minor child to remain with Lisa.

A. PRESUMPTIONS UNDER THE CHILD CUSTODY ACT

At the outset, we note the steps necessary to effectuate a change in custody pursuant to the Child Custody Act. A party seeking a change in custody must first establish proper cause or a change of circumstances by a preponderance of the evidence. *Vodvarka, supra* at 508-509; MCL 722.27(1). The movant must make this showing before the trial court can consider which burden of persuasion applies and conduct a child custody evidentiary hearing. *Vodvarka, supra* at 509. These initial steps, requiring the movant to establish proper cause or a change of circumstances, as well as the trial court's consideration of the burden of persuasion, taken before the court can conduct the evidentiary hearing "are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Id.* (quotation marks and citation omit-

ted). Accordingly, when a motion for a change of custody is made, it is not improper for a trial court to continue the child's current established custodial environment pending the evidentiary hearing.

As indicated, after a movant first establishes proper cause or a change of circumstances warranting a change in custody, the trial court must then determine the relevant burden of persuasion before conducting the hearing. In most instances, the factual history of the case will not require lengthy consideration of the issue. Generally, if a petition for a change in custody involves a parent and a third party, there is a strong presumption that awarding custody to the parent is in the child's best interests. See *Heltzel, supra* at 26. This presumption is based on parents' fundamental due process liberty interest in the care, custody, and control of their children. *Troxel v Granville*, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000); *Herbstman v Shiftan*, 363 Mich 64, 67; 108 NW2d 869 (1961). The Legislature recognized this interest in MCL 722.25(1), which provides the following burden of persuasion:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.

In such instances, the third party will bear the burden of proof and is required to rebut the parental presumption by clear and convincing evidence. *Heltzel, supra* at 26.

The Child Custody Act, however, also creates a presumption in favor of maintaining the established custodial environment. MCL 722.27(1)(c) provides, in relevant part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

\* \* \*

> (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

This provision permits a court to modify a custody order so as to change a child's established custodial environment only if there is "clear and convincing evidence that it is in the best interest of the child." *Id.* As a result, in custody disputes between a parent and a third party with whom a child has an established custodial environment, a conflict arises between these two presumptions.

### B. *HELTZEL v HELTZEL* AND *MASON v SIMMONS*

Courts have attempted to reconcile the interplay between the parental presumption and the custodial environment presumption in situations where, as here, the conflict exists. In *Heltzel* this Court determined, in recognition of parents' fundamental liberty interest in raising their children, that the parental presumption trumps the presumption of an established custodial environment. *Heltzel, supra* at 23-28. And, we agree

with that conclusion. This parental presumption protects not only parents' rights to the care and custody of their children, but also protects the children's parallel rights to the integrity of their family. Accordingly, in order to overcome the parental presumption, the *Heltzel* Court held that a third party nonparent must "prove[] that all relevant factors, including the existence of an established custodial environment and all legislatively mandated best interest concerns within [MCL 722.23], taken together clearly and convincingly demonstrate that the child's best interests require placement with the third person." *Heltzel, supra* at 27. Thus, under normal circumstances, where the parent is fit, he or she is entitled to the parental presumption and the third party bears the burden of persuasion.

However, in *Mason v Simmons*, 267 Mich App 188, 190-192; 704 NW2d 104 (2005), which involved a custody dispute between a parent and a custodial third party, this Court addressed whether an unfit parent is to be afforded the same deferential treatment to which a fit parent is entitled in considering a child's best interests in a custody dispute between the parent and the third party. The Court held that "when a parent's conduct is inconsistent with the protected parental interest, that is, the parent is not fit, or has neglected or abandoned a child, the reasoning and holding of *Heltzel* do not govern." *Id.* at 206. The Court did find, however, that because of the fundamental constitutional right of parents to make decisions concerning the care and custody of their children, even an unfit parent was entitled to some deference given his or her status as a parent. *Id.* at 198. Thus, in custody disputes between an unfit parent and a third-party custodian, even though the presumption in favor of maintaining an established custodial environment is triggered and the burden of persuasion shifts to the parent, the lower "preponder-

ance of the evidence" burden of persuasion is on the unfit parent to demonstrate that a change in the established custodial environment is in the child's best interests.[6] *Id.* at 207.

While neither *Heltzel* nor *Mason* directly addresses the factual situation presented in this case, these two cases, taken together, nonetheless inform the present matter because an unfit parent, or one who acts inconsistently with his or her parental interest, is not entitled to the parental presumption announced in *Heltzel*. Further, and most significantly, *Heltzel* and *Mason* indicate that an additional step is necessary, under certain limited circumstances, before applying the framework announced in *Vodvarka* in change of custody matters. Namely, when a custody issue arises between a parent and a third party after the death of a custodial parent, which issue presents legitimate and compelling indicia on the record that raise serious concerns regarding the parent's current ability to care for the safety and welfare of the child and suggests that the parent is unfit, the trial court is required to first make a preliminary finding of parental fitness before proceeding further. Once this preliminary finding is made, whether by judicial notice if appropriate,[7] through pleadings and documentary evidence, or by an evidentiary hearing, the trial court may proceed to determine the proper burden of persuasion to be applied, as announced in either *Heltzel* or *Mason*. There is no require-

---

[6] We are bound to apply the holding in *Mason, supra,* pursuant to MCR 7.215(J)(1), even though we recognize that it appears to conflict with the plain language of MCL 722.27(1)(c): "The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

[7] We can envision circumstances in which a child, because of the actions of an individual parent, is under the jurisdiction of the juvenile court. MCL 712A.2 *et seq.*

ment, despite the parent's fundamental liberty interest, that the child be immediately returned to an allegedly unfit noncustodial parent because these preliminary steps are necessary for the protection of the child's health and welfare and to prevent unwarranted and disruptive changes of custody. *Vodvarka, supra* at 509. However, we emphasize, for the purpose of providing trial courts with guidance in future similar circumstances, that in the absence of any legitimate indicia indicating that a noncustodial parent is unfit to the extent that a child may be at risk if returned, and in the absence of any legal relationship between the third party and the child, the trial court is required to return the child to the non-custodial parent upon notice of a custodial parent's death.[8]

### C. APPLICATION

In the present matter, defendant had physical custody of the minor child and joint legal custody of the minor child with plaintiff, while Lisa, in the context of this child custody dispute, had no legal relationship with the minor child. Once plaintiff learned of defendant's death, plaintiff petitioned the trial court for a change of custody. There is no dispute that plaintiff established by a preponderance of the evidence that a change in circumstances, defendant's death, warranted her petition for a change of custody. *Vodvarka, supra* at 509. Under normal circumstances, any custodial arrange-

---

[8] While the circuit courts of this state have continuing jurisdiction over child custody disputes, *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004), there will generally no longer be any case or controversy to resolve after the death of a custodial parent. In that event, the circuit court's exercise of its continuing jurisdiction over the child would merely involve dissolving the order awarding custody and returning the child to the surviving parent, including taking any necessary steps to provide for the orderly transition of the child to the care and custody of the surviving parent.

ments with a third party would have yielded to a parent's constitutional right to the custody and care of the child and the parental presumption of MCL 722.25(1), and plaintiff would have been awarded custody of the minor child upon notice of defendant's death.

This was not the outcome of plaintiff's motion for a change of custody. At the hearing on plaintiff's motion for rehearing, the trial court noted the factual history of the case, including plaintiff's consistent drug abuse, plaintiff's residence with an abusive boyfriend, and plaintiff's neglect of the minor child. Given the substantial evidence on the record, the trial court had legitimate concerns regarding plaintiff's parental fitness, especially in light of the fact that plaintiff was only permitted supervised visitation and tested positive for cocaine on the date of the evidentiary hearing. Because the record contained serious legitimate and compelling allegations regarding plaintiff's current parental fitness, the trial court, while recognizing both the parental presumption and the custodial environment presumption, indicated that it would continue its current orders until more information had been collected regarding plaintiff's fitness. This was the proper course of action. It was appropriate for the trial court to maintain the status quo while it made its preliminary findings, including first determining plaintiff's parental fitness, then determining which burden of persuasion would be applicable, and finally conducting the evidentiary best interests hearing. The trial court did not commit clear legal error, nor did it abuse its discretion by permitting the minor child to remain with Lisa in the interim.

### D. PARENTAL FITNESS

Although we have concluded that the trial court did not err, we find it necessary to provide some guidance

with respect to making a constitutionally sound determination of parental fitness, because the trial court must make such a finding on remand. We first note that while the courts of this state have consistently held that the rights of a parent are not to be disturbed absent a showing of unfitness, they have not articulated a clear standard by which a parent may be found unfit in the context of a child custody dispute and the application of the parental presumption. See *Burkhardt v Burkhardt*, 286 Mich 526, 534-535; 282 NW 231 (1938); *Liebert v Derse*, 309 Mich 495, 500; 15 NW2d 720 (1944); *Riemersma v Riemersma*, 311 Mich 452, 458; 18 NW2d 891 (1945). In *Mason, supra,* in which this Court ultimately concluded that the parental presumption of MCL 722.25(1) does not apply if a parent is found to be unfit, the Court provided little direction with respect to making a finding of fitness. The Court merely stated: "If a parent is unfit or fails to adequately care for a child, i.e., neglects or abandons a child, [the parental presumption is] extinguished." *Mason, supra* at 200. Over four decades earlier, in *Herbstman, supra,* our Supreme Court provided a similar, albeit more nuanced, approach to making a finding of parental fitness. The Court stated:

> The rights of parents are entitled to great consideration, and the court should not deprive them of custody of their children without extremely good cause. A child also has rights, which include the right to proper and necessary support; education as required by law; medical, surgical, and other care necessary for his health, morals, or well-being; the right to proper custody by his parents, guardian, or other custodian; and the right to live in a suitable place free from neglect, cruelty, drunkenness, criminality, or depravity on the part of his parents, guardian, or other custodian. It is only when these rights of the child are violated by the parents themselves that the child becomes subject to judicial control. [*Herbstman, supra* at 67-68.]

More recently, our Supreme Court in *In re Clausen,* *supra* at 686, recognized the interdependent nature of both children's and parents' liberty interests. The Court indicated that these mutual interests may be broken where a parent is unfit, thereby warranting interference with the parent-child relationship. *Id.* at 687 n 46.

Each of these cases relates parental fitness to the child's needs. And, while none of these cases articulates a standard for determining parental fitness, it is nonetheless clear, given the interdependent nature of the rights involved, that the inquiry must focus on a parent's abilities relative to the child's needs when determining parental fitness. See *id.*; *Herbstman, supra* at 67-68. In many instances, the relevant factors may be plainly evident in the facts of the case. However, courts may also look for additional guidance from the criteria enumerated in MCL 712A.2(b) and utilized in child protective proceedings. See *In re Brock,* 442 Mich 101, 107; 499 NW2d 752 (1993) ("The purpose of child protective proceedings is the protection of the child . . . ."). As our Supreme Court outlined in *Herbstman, supra* at 67-68, such criteria may include, but are not limited to, the ability or inability to provide: proper and necessary supervision and support; education as required by law; medical, surgical, and other care necessary for a child's health, morals, or well-being; and a safe and suitable environment free from neglect, cruelty, drunkenness, criminality, or depravity.[9] Further, given the fundamental nature of the liberty interest involved, *Troxel, supra* at 65, we are of the view that a parent should be deemed unfit only after such an

---

[9] We stress that these factors are to be considered only in the context of determining a parent's fitness and are not to be weighed in comparison to the competing custodian.

inquiry shows, by a preponderance of the evidence, that the parent is, in fact, *currently* unfit. See *In re Brock,* *supra* at 108-109. It is important for us to stress that a finding of unfitness in the context of custody proceedings may always be revisited. That a parent is once found unfit does not somehow bar him or her from resolving issues, becoming fit in the future, and seeking custody at a later time whereupon the parental presumption would again be applied.

### V. CUSTODY AWARD "TO OTHERS"

Plaintiff further claims that the trial court improperly concluded that it had authority, pending an evidentiary hearing, to award custody to Lisa, a third party without standing, pursuant to MCL 722.27(1)(a), which provides, in pertinent part:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may . . . :
>
> (a) Award the custody of the child to 1 or more of the parties involved *or to others* and provide for payment of support . . . ." [Emphasis added.]

In plaintiff's view, the language referring "to others" in MCL 722.27(1)(a) means "others with standing." We observe at the outset that the trial court has not acted pursuant to this authority at this point in the proceedings, although it has indicated that it has the power to make such an award regardless of the applicable presumption. We agree with the trial court.

The meaning of MCL 722.27(1)(a) is clear and unambiguous. If a child custody dispute is pending, the trial court may award custody of the child to others if it is in the child's best interests. There is no limiting language

in the statute that conditions an award "to others" to only those "others having standing," as plaintiff argues. Rather, the statute's sole limitation is that the award be in the child's best interests, after weighing the parental presumption, applicable burdens of proof, and the statutory best interests factors.

Further, we cannot agree with plaintiff's argument that the Legislature must have intended the "to others" provision to mean "others with standing" because interpreting the language to include all "others" would abrogate the standing requirements of MCL 722.26c. To adopt plaintiff's interpretation is to engage in judicial construction, which is neither necessary nor permitted when, as in this case, a statute is plain and unambiguous. *Taylor*, *supra* at 94. Moreover, there is no merit to plaintiff's contention that the standing requirements of MCL 722.26c will be abrogated if trial courts are permitted to award custody "to others" for the child's best interests. As we have discussed, if a third party lacks standing, he or she cannot become a party to a custody dispute. *Bowie*, *supra* at 48-49. It is a threshold requirement of MCL 722.27(1) that a custody dispute be properly initiated before the trial court can make any award. A third party without standing cannot initiate that dispute. However, once a custody dispute has been properly initiated, it is within the court's authority to award custody of the child to a third party pursuant to MCL 722.27(1)(a) if it is appropriate to do so under the particular facts of the case. The trial court was not inaccurate in its statement that it had authority to award the child at issue "to others" pursuant to MCL 722.27(1)(a) after a best interests evidentiary hearing.

## VI. CONSTITUTIONAL CLAIM

Lastly, plaintiff characterizes the trial court's determination as an egregious violation of her constitutional

rights because the decision effectively allows "any person" at "any time" to obtain custody of a child, contrary to *Troxel, supra* at 65. We disagree. Plaintiff's characterization of the trial court's determination is inaccurate. The trial court did not allow Lisa to petition for custody of the minor child or to intervene in the paternity action because, in fact, the trial court ruled that Lisa lacked standing. Thus, the trial court's decision cannot be construed as permitting "any person" to seek, "at any time," custody of a child.

Rather, the trial court in this matter recognized the parental deference that is due under due process standards, *Heltzel, supra,* and properly indicated that this parental preference is afforded only to fit parents, *Mason, supra.* The trial court further indicated that the presumption in favor of maintaining an established custodial environment would apply if plaintiff is found to be currently unfit. *Mason, supra.* These recognized burdens of proof adequately protect plaintiff's fundamental right and liberty interests, particularly in light of the consideration of the child's best interests, safety, and welfare. Therefore, we conclude that the trial court did not deny plaintiff's constitutional right to the care, custody, and control of the minor child.

Having found that the trial court did not commit clear legal error or abuse its discretion, we affirm the trial court's interim custody order permitting the minor child to remain in the established custodial environment of Lisa's home pending the best interests hearing. MCL 722.28; *Berger, supra* at 705.

Affirmed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.