*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TARVIS, Minors.

UNPUBLISHED
December 22, 2022

Nos. 359744; 359745; 359746;
    359747
Houghton Probate Court
LC Nos. 2021-026854-GM;
        2021-026856-GM;
        2021-026857-GM;
        2021-026855-GM

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Appellant, the children's father, appeals by right the probate court orders granting permanent guardianships of four children to appellees, who are the children's brother, Jacob, and sister-in-law, Karen.[1]  We affirm.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

These proceedings arose after the tragic death of the children's mother in a traffic accident. Appellant married the children's mother on August 28, 2004.  At the time, the mother had three children from a prior relationship.  The couple went on to have seven additional children.  During the course of the marriage, appellant worked for a bathroom fixture and accessory manufacturer while the mother operated a daycare.  After work, appellant would retire to the garage and fix machinery to earn extra income.

---

[1] Guardianship proceedings were commenced for two more children, TT and BT, who nominated the appellees as their guardians.  Appellant consented to those guardianships.  Appellant challenged the request for guardianship over LT (d/o/b 2/20/08), KT (d/o/b 5/17/09), DT (d/o/b 5/24/11), and IT (d/o/b 5/19/13).

The parties disputed the nature of the couple's relationship and appellant's role as a father. The eldest children denied that they were adopted by appellant[2] and alleged that he was physically and verbally abusive to them and their siblings. They further testified that appellant was not affectionate or comforting to any of the children and did not play a role in parenting. Rather, their testimony indicated that appellant retired to the garage after work where he drank alcohol to excess either alone or with friends. Although appellant claimed that he picked the children up from school and took them to doctor appointments, the children's testimony indicated that the mother was responsible for raising the children, maintaining the home, and doing the shopping. When the three eldest boys were able, they assisted their mother with the care of the younger children. Additionally, appellee Jacob assumed a "father figure" role by teaching his siblings to hunt, fish, and play sports. Although appellee Jacob moved out of the family home and joined the National Guard, he testified that he frequently returned home, had a close relationship with his siblings, and performed necessary repairs and maintenance on the family home for the mother. He testified that he even built a bedroom for TT, his only female sibling.

In addition to his abuse of the children, there was also testimony that appellant verbally and physically abused the mother. With regard to one incident, appellant testified that the mother physically struck him, and he pushed her in response. Because the mother would suffer adverse consequences to her daycare business, appellant testified that he accepted responsibility for the incident and was convicted of domestic violence in 2012. Appellant also disputed the children's testimony regarding verbal and physical abuse. He continued to assert that he picked the children up from school and took them to appointments. Appellant acknowledged that he did not attend sporting activities for the children because he was home watching the other children.[3]

The mother filed a complaint for divorce on September 9, 2016, and a temporary order entered on November 4, 2016, gave the mother sole legal and physical custody. On March 13, 2017, the consent judgment of divorce was entered and again gave the mother sole legal and physical custody. Although appellant was granted visitation, he initially moved into a camper on a friend's property and later into an apartment. Appellant acknowledged that he never had the children for overnight visits because of his small residence. He was required to pay $560 a month in child support and was in arrears at the time of the mother's death. Appellant further acknowledged that his visits with the children were infrequent but he faulted the mother. He claimed that a dispute arose regarding the mother's failure to make payments on a vehicle. As a result, the mother interfered with appellant's visitation, impacting his relationship with the children. Additionally, in November 2017, appellant began a relationship with Jennifer, who worked in a hospital, and they later married in 2019. He alleged that the mother further limited his contact with the children because of Jennifer's employment in a hospital during the pandemic.

---

[2] Appellant asked the trial court to take judicial notice of other court files. The court noted that it only located proceedings evidencing the children's last name change.

[3] Appellees presented testimony from school personnel and neighbors that appellant did not attend parent-teacher conferences. The school superintendent testified that he could not identify appellant as the children's father. Appellant presented witnesses to contradict the children's testimony that they were verbally and physically abused by appellant.

Appellant, however, never moved to enforce visitation with his children. He testified that he called the Friend of the Court (FOC) but never received a response.

On August 16, 2021, the mother and her children left the beach and were en route to get ice cream in two different vehicles. The first vehicle was able to avoid a careless driver, but the second vehicle driven by the mother was struck. She died from her injuries the next day.

That same day, appellee Jacob filed a petition for temporary guardianship of the minor children on the basis that one of the children was injured in the accident and no one had authority to make medical decisions for the child.[4] A guardian ad litem (GAL) was appointed for the children. She attempted to contact appellant on August 17, 2021, but he did not respond until September 1, 2021.[5] On August 18, 2021, appellees were appointed temporary guardians for the minor children through September 22, 2021.

After the parties obtained legal counsel, appellees filed an amended petition requesting the temporary guardianship premised on MCL 700.5204(2)(a) in light of the fact that the mother had been granted sole legal and physical custody of the children following her divorce from appellant. Appellant objected to the temporary guardianship. On October 18, 2021,[6] the trial court extended the temporary guardianship through December 3, 2021. On October 20, 2021, the trial court ordered the FOC to investigate the guardianship of the minors.

At a multiday hearing to address the extension of the guardianship, the eldest children, the mother's relatives and friends, and school personnel testified regarding the mother's care of the children, appellant's treatment of and interaction with the children, and the eldest siblings' role in aiding the mother to raise the children. Additionally, appellee Jacob testified regarding how appellant's abuse of alcohol and treatment of the children impacted him and caused him to assume a father figure role. The FOC and GAL investigation recommended that the temporary guardianship with appellees become permanent. Appellant testified that he had changed since the divorce in 2017. He was no longer employed because of injury, pursuing an appeal of a disability claim, and cooking and maintaining the household for Jennifer, his wife. Appellant's witnesses disputed the testimony offered by appellees, indicating that they did not witness signs of abuse. Additionally, appellant asserted that the FOC relied on outdated information. The trial court

---

[4] The attachment to the petition also noted that the mother had sole legal and physical custody of the children, that appellant had little to no contact with the children since the divorce other than holiday visits, and that his child support payments were in arrears.

[5] The trial court stated that appellant sought custody of the children on August 18, 2021, in the divorce action. We do not have the benefit of the lower court record in the divorce action. The trial court also noted that a Baraga County Probate judge issued the temporary orders of guardianship on August 18, 2021.

[6] Although the lower court record seemingly indicates that a hearing was held on this date, we were not provided with a transcript of the hearing. Appellant had the obligation to file the complete transcript of testimony and other proceedings. MCR 7.210(B)(1)(a).

determined by clear and convincing evidence that welfare of the minor children was served by the appointment of appellees as full guardians.[7]

## II. STANDARDS OF REVIEW

The probate court's dispositional ruling to issue a guardianship is reviewed for an abuse of discretion. See *In re Gordon*, 337 Mich App 316, 318; 975 NW2d 114 (2021). An abuse of discretion occurs when the court chooses an outcome outside the range of reasonable and principled outcomes. *Id.* The probate court's factual findings are reviewed for clear error. *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017). A factual finding is clearly erroneous when the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.*

The appellate court reviews de novo constitutional questions and issues of statutory interpretation. *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009). Whether the trial court properly interpreted and applied the relevant statutes is also reviewed de novo. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). The appellate court has a duty to interpret statutes "as being constitutional whenever possible." *In re Sanders*, 495 Mich 394, 412-413; 852 NW2d 524 (2014).

## III. STATUTORY GROUNDS FOR GUARDIANSHIP

First, appellant alleges that the trial court erred by granting a guardianship to appellees without granting him a parental fitness hearing. He also asserts that appellees did not have statutory standing to file a petition for guardianship and that, because there was no basis to grant a guardianship, appellees did not have standing to seek custody of the children.[8] We disagree.

Under MCL 700.5204(2), the court may appoint a guardian for a minor when:

(a) The parental rights of both parents or the surviving parent are terminated or suspended by prior court order, by judgment of divorce or separate maintenance,

---

[7] We are aware from the trial court's factual findings that appellant apparently filed a motion for custody in the divorce action shortly after the mother's death. When the temporary guardianship was pursued by appellees to protect the minor children's welfare and ensure medical treatment, there was no evidence that appellant acted in an exigent manner. That is, there is no indication that he filed an emergency motion for custody. As already noted, the guardian ad litem indicated that she attempted to contact appellant on August 17, 2021, but he did not respond until September 1, 2021.

[8] Procedurally, the trial court ordered that it would consider the guardianship proceeding and appellant's motion for custody in the divorce matter at the same hearing. We presume that the trial court's goal was to conduct one evidentiary hearing. And because appellant has not filed a claim of appeal from a custody determination in the divorce action, we limit our disposition to the court's decision to award a full guardianship to appellees.

by death, by judicial determination of mental incompetency, by disappearance, or by confinement in a place of detention.

(b) The parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed.

In this case, the court initially granted a guardianship under MCL 700.5204(2)(b). However, appellant did not permit the children to reside with appellees; rather, the children resided with appellees because their mother had died. MCL 700.5204(2)(b) applies when a parent permits the child to permanently reside with someone else, which necessarily requires permission. *Deschaine v St Germain*, 256 Mich App 665, 670; 671 NW2d 79 (2003). Like in *Deschaine*, the children in this case resided with appellees as a result of their mother's death, not because appellant had given them permission to do so. Thus, MCL 700.5204(2)(a) was the appropriate statutory ground for the guardianship, not MCL 700.5204(2)(b).

And this Court will not modify a decision of the trial court on the basis of a harmless error. MCR 2.613(A). The trial court subsequently corrected its basis for the guardianship by granting appellees a guardianship under MCL 700.5204(2)(a) because the judgment of divorce suspended appellant's parental rights.[9]

Appellant contends that the trial court erred by holding that the parties' judgment of divorce suspended his parental rights. We disagree. The concept of custody is divided into "custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *In re AJR*, 496 Mich 346, 361; 852 NW2d 760 (2014). A guardianship order suspends a parent's parental rights because it grants the guardian the right to physical and legal custody of the child. *Hunter*, 484 Mich at 277. If a guardianship order suspends a parent's parental rights because it grants sole physical and legal custody to another individual, then a divorce judgment that grants sole physical and legal custody to the other parent also suspends the parental rights of the parent without any kind of custody. A guardianship becomes necessary because when a parent having sole legal custody of the child dies, the child is left without anyone to legally make important decisions affecting the child's welfare. Because a grant of sole legal custody may later be altered, the parent's rights to make decisions for the child would be suspended rather than terminated.

---

[9] We also reject appellant's contention that MCL 700.5204(2)(a) discriminates against children of divorce by treating them differently. The statute is presumed to be valid, and the appellant must demonstrate that any classifications flowing from the statute are arbitrary and unreasonable. *Wiles v Liquor Control Comm*, 59 Mich App 321, 324; 229 NW2d 434 (1975). Appellant's contention of discrimination arises not from the statute itself but from his agreement to give up both legal and physical custody of the children. Thus, he did not overcome the presumption of validity.

Appellant's argument that appellees lacked standing to initiate custody proceedings therefore fails. MCL 722.26b(1) explicitly provides that a guardian has standing to bring a custody action.[10] Because the trial court did not err by appointing appellees as the guardians of the children, appellees would have standing to initiate a custody action as the children's guardians.[11] Appellees, however, pursued a guardianship after the mother's death, and it was appellant that filed a custody motion in the divorce action. Appellant's challenge to standing is without merit.

## IV. CHILDREN'S BEST INTERESTS

First, appellant submits that the trial court inappropriately granted custody to appellees without first conducting a parental fitness hearing. We disagree. Because a parent is entitled to the presumption that custody with the parent is in the children's best interests regardless of parental fitness, the trial court was not required to hold a hearing for that presumption to apply.

---

[10] There is an exception to this general rule. The guardians may not bring a custody action if the parents have substantially complied with a limited-guardianship placement plan. MCL 722.26b(2). That scenario, however, does not apply to this case.

[11] Appellant further submits that the trial court erred in failing to apply *In re Anjoski*, 283 Mich App 41, 44-47; 770 NW2d 1 (2009). In *Anjoski*, the plaintiff and the defendant conceived a child out of wedlock. Initially, the plaintiff acquired sole legal and physical custody of the minor child with parenting time for the defendant. But, after the plaintiff lived with an unstable boyfriend and engaged in illegal drug use among other improprieties, the defendant was awarded sole physical custody but the parties agreed to maintain joint legal custody. The defendant's wife, Lisa, did not establish guardianship or any other legal connection to the child. After the defendant died, Lisa filed a complaint for child custody, but it was dismissed for lack of standing. Nonetheless, the trial court declined to remove the child from Lisa's custody pending an evidentiary hearing despite MCL 722.25 and its parental presumption that placement with the parent was in the child's best interests. *Id*. The *Anjoski* Court stated that "[u]nder normal circumstances, any custodial arrangements with a third party would have yielded to a parent's constitutional right to the custody and care of the child and the parental presumption of MCL 722.25(1) and [the] plaintiff would have been awarded custody of the minor child upon notice of [the] defendant's death." *Id*. at 58-59. The trial court recognized the parental presumption and custodial environment presumption but continued its orders until additional information could be gathered in light of the plaintiff's drug abuse, abusive boyfriend, and neglect of the minor child. *Id*. at 59. This Court affirmed that determination, concluding the status quo was "the proper course of action." *Id*. Furthermore, this Court noted that MCL 722.27 allowed a custody award of the child "to others" and did not confine "others" to those individuals with standing. *Id*. at 62-63. We conclude that appellant's reliance on *Anjoski* is misplaced. Unlike the *Anjoski* plaintiff, appellant did not agree to joint legal custody of the child. Additionally, the minor children had limited recent contact with appellant, the minor children were minimally subject to verbal abuse by appellant, the minor children were experiencing issues arising from the death of their mother, appellees were ensuring that the minor children received the necessary counseling to address their grief, and the minor children had never been separated from each other. Appellant equivocated in the need to obtain counseling for the children's issues as well as the need to address his fractured relationship with them.

-6-

Michigan has a "longstanding history of affording great respect to parental authority while consistently recognizing that the best interests of the child control the analysis." *Hunter*, 484 Mich at 264. MCL 722.25(1) provides the presumption that custody with a parent is in the child's best interests:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.

This standard provides sufficient constitutional deference to the parent's fundamental right to care and custody of a child because clear and convincing evidence is required to rebut that presumption. *Hunter*, 484 Mich at 264-265. The presumption that custody with a parent is in the child's best interests "applies to all natural parents who are in custody disputes with third persons, not merely fit natural parents." *Id*. at 271.

A third party seeking custody of a child "must establish by clear and convincing evidence that it is not in the child's best interests under the factors specified in MCL 722.23 for the parent to have custody." *Id*. at 265. Due process does not require a separate fitness determination because fitness is "an inextricable component of the court's inquiry." *Id*. at 270. The best-interest factors consider questions of moral fitness and mental and physical health of the parties, establishing a legislative determination that parental fitness is important even though the focus is on the best interests of the child. *Id*. at 270-271.

Appellant's argument that the trial court was required to determine whether he was an unfit parent is incorrect. Appellant was entitled to a presumption in his favor *regardless* of his fitness as a parent. And the record reflects that the trial court did in fact award him that presumption by expressly considering his constitutional rights to raise his children, by characterizing the parental presumption as "strong" and stating that he was "on elevated footing because he is a parent," and by requiring appellees to establish that, by clear and convincing evidence, it was in the children's best interests to grant custody to a nonparent. The trial court did not err in its application of this parental presumption.

Second, appellant asserts that the FOC made inappropriate and outdated findings. Any errors or outdated statements in the FOC's report are harmless because the trial court, not the FOC, determined the children's best interests. Appellant alleges that the trial court relied on witnesses with limited or no personal knowledge of appellant after the divorce. On balance, we conclude that the trial court's findings were not against the great weight of the evidence and its decision to grant a guardianship was not an abuse of discretion.

The trial court must make its determination about a child's custody on the basis of the child's best interests. MCL 722.25(1). A third party seeking custody of a child "must establish by clear and convincing evidence that it is not in the child's best interests under the factors

specified in MCL 722.23 for the parent to have custody." *Hunter*, 484 Mich at 265. To determine what is in the child's best interests,[12] the trial court must consider the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

> (h) The home, school, and community record of the child.

> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

> (k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

> (*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

---

[12] We note the factors delineated for determining child custody essentially parallel the best interests factors examined for purposes of deciding a guardianship. See MCL 700.5101(a)(*i*)-(*xii*).

This Court need not consider an argument that does not address the basis of the trial court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

Appellant repeatedly attacks the FOC's report in his brief on appeal. In this case, there is no indication that the trial court relied on the FOC's report rather than the entire body of the evidence when it made its factual findings. The trial court's findings address many of the deficiencies that appellant raises with the FOC's report. We have reviewed each of the trial court's findings regarding the best-interest factors and conclude that the court did not palpably abuse its discretion when it found that the evidence overwhelmingly favored granting custody to appellees. The trial court properly determined that appellees had presented clear and convincing evidence to overcome the presumption that custody with appellant was in the children's best interests.

## V. PARENTING TIME

Appellant submits that the trial court abused its discretion by ordering limited parenting time of four hours a week. We are not convinced that the court's decision was grossly violative of fact and logic.

For the children's welfare, the court may "order reasonable parenting time and contact . . . ." MCL 700.5204(5). This Court must affirm a trial court's parenting-time order "unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted).

It is presumed that having a strong parental bond is within a child's best interests. MCL 722.27a(1). Accordingly, "parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1). Among other factors that the court may consider, the court may consider "[t]he existence of any special circumstances or needs of the child." MCL 722.27a(7)(a). The court may also consider "[w]hether a parent has frequently failed to exercise reasonable parenting time." MCL 722.27a(7)(g).

In this case, the trial court's findings regarding parenting time were primarily premised on the children's recent tragedy and the general absence of appellant from the children's lives before the accident. Regardless of the reasons, appellant did not have much of a relationship with the children and had not previously exercised his parenting time on a regular basis. Indeed, the older children who were not required to engage in parenting time attended the visits at the request of their younger siblings to provide support. Under these circumstances, it was not grossly violative of fact and logic for the trial court to reintroduce appellant into the children's lives slowly.

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica

-9-