*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY MORIN and NICOLE MORIN,

        Plaintiffs-Appellees,

v

BRIAN FYE

        Defendant-Appellant,

and

TORRI MORIN,

        Defendant.

UNPUBLISHED
April 13, 2023

No. 362619
St. Clair Circuit Court
LC No. 14-002648-DC

---

SARRA WILLIAMSON,

        Plaintiff-Appellee,

v

BRIAN FYE,

        Defendant-Appellant,
and

TORRI MORIN,

        Defendant.

No. 362620
St. Clair Circuit Court
LC No. 14-001709-DC

---

RAINEE HEINZ,

        Plaintiff-Appellee,

-1-

v                                                        No. 362622
                                                         St. Clair Circuit Court
BRIAN FYE,                                               LC No. 14-002304-DC

                    Defendant-Appellant,
and

TORRI MORIN,

                    Defendant.


Before: CAMERON, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

In Docket No. 362619, defendant, Brian Fye (father), appeals as of right the trial court order granting sole physical custody of LF1 to defendant, Torri Morin (mother), and granting father and mother joint legal custody. In Docket No. 362620, father appeals as of right the trial court order granting plaintiff, Sarra Williamson (Williamson), sole physical custody of BF and KF, and granting mother, father, and Williamson joint legal custody. In Docket No. 362622, father appeals as of right the trial court order granting sole physical custody of LF2 to plaintiff, Rainee Heinz (Heinz), and granting mother, father, and Heinz joint legal custody. We affirm.

## I. BACKGROUND

Mother and father were married and share four children: LF1, LF2, BF, and KF. Father and mother's relationship involved domestic violence, and they both abused substances. They ultimately divorced, and it was determined by mother's family members that mother and father were unable to adequately parent the children. In 2014, Williamson successfully petitioned for custody of BF and KF. In 2015, Heinz successfully obtained custody of LF2, and plaintiffs, Gregory Morin and Nicole Morin, mother's parents, were granted custody of LF1. Although mother and father were granted parenting time, they continued to demonstrate periods of instability. At times, the guardians would not permit them to see the children. In 2018, mother began to demonstrate sobriety. Father also began making positive changes in his life, including obtaining stable housing, participating in therapy with Camella Gild, completing anger management and parenting classes, and working toward obtaining his bachelor's degree.

In April 2021, father moved the trial court to grant him sole legal and physical custody of the children, arguing proper cause or a change of circumstances existed to revisit the custody orders. Father noted his constitutional right to parent his children. Jolene Pemberton, a clinical social worker, conducted assessments. Pemberton recommended that the children be returned to father's care in a gradual manner and with therapeutic support because of the amount of time the children had spent in the care of their guardians. After father filed his motion for custody, Gregory

died and mother moved for custody of LF1. Nicole, who was having serious health issues, agreed that mother should regain custody of LF1.

The contested custody hearing was held over several months. The parties disputed father's ability to parent the children and provide them with a stable environment. The parties' ability to facilitate relationships between each other and the children was also highly contested. After interviewing the children *in camera* after the close of proofs, the trial court made detailed findings of fact on the record. The trial court reviewed the best-interest factors contained in MCL 722.23, and noted the relevant standard of proof was clear and convincing evidence. After reviewing the best-interest factors, the trial court made the custody determinations outlined above, and granted father increased parenting time. These appeals followed, and were consolidated by this Court.[1]

## II. STANDARDS OF REVIEW

In custody cases, we apply three standards of review. *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021).

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, [this Court] review[s] under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Id.* at 644-645 (quotation marks and citations omitted).]

We defer to the trial court concerning issues of credibility. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

## III. SUFFICIENCY OF THE TRIAL COURT'S FINDINGS OF FACT

At the outset, we note that father argues that the trial court failed to make adequate factual findings concerning the best-interest factors. We disagree.

When ruling on a motion to change custody, the trial court must make findings of fact with respect to each of the relevant best-interest factors in MCL 722.23. *MacIntyre v MacIntyre*, 267

---

[1] *Morin v Fye*, unpublished order of the Court of Appeals, entered September 14, 2022 (Docket Nos. 362619; 362620; 362622).

Mich App 449, 451-452; 705 NW2d 144 (2005). "These findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007) (quotation marks and citations omitted). "[I]f the trial court determines that a particular factor is irrelevant to the immediate issue, it need not make substantive factual findings concerning the factor beyond this determination, but need merely state that conclusion on the record." *Pierron v Pierron*, 486 Mich 81, 91; 782 NW2d 480 (2010).

Review of the record establishes that the trial court made sufficient findings concerning the best-interest factors. While the trial court sometimes did not consider father, mother, the children, and the guardians individually when making certain findings, the trial court thoroughly discussed each factor and clearly considered each of the children, whose circumstances were often similar. There was voluminous testimony in this case, and it is unreasonable to expect the trial court to comment on every matter. Importantly, the trial court is not required to do so. See *Rittershaus*, 273 Mich App at 475. Multiple witnesses testified about the individual children, and there is no indication that the trial court did not consider that evidence. Indeed, the trial court thoroughly explained the best-interest factors and considered the children's individual needs when appropriate to do so. As this Court explained in *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001), "[t]he trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." The trial court made more than a sufficient record from which this Court can conduct a proper review. While some of the trial court's findings may appear brief to father, the entirety of the record reveals that the trial court gave each party ample opportunity to present their case and intently listened and then issued its findings and ultimate ruling. While the custody decision partially went against father, this is not, by itself, indicative of the trial court failing to make proper findings.

Factor (i) of the best-interest factors is "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). Father argues that this Court cannot consider whether factor (i) weighed in favor of mother, father, or the guardians because the trial court failed to keep a record of the *in camera* interviews of the children. However, father does not provide any authority that the trial court was required to do so and does not provide any meaningful analysis. Parties "may not merely announce [their] position and leave it to this Court to discover and rationalize the basis for [their] claims, nor may [parties] give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). Consequently, because father merely announced his position without providing binding authority or meaningful analysis, the argument is abandoned and need not be considered by this Court. See *id*.[2]

---

[2] To the extent we have considered the argument, we conclude that it lacks legal merit because our Supreme Court has made it clear that *in camera* interviews with minor children in custody proceedings need not be recorded. *Molloy v Molloy*, 466 Mich 852, 852; 643 NW2d 574 (2002). "If a trial court relies significantly on information obtained through the in camera interview to resolve factual conflicts relative to any of the other best interests factors and fails to place that

-4-

IV. THE TRIAL COURT'S CUSTODY DECISION WITH RESPECT TO LF1

Father argues the trial court abused its discretion by granting mother sole physical custody of LF1, and granting father and mother joint legal custody. We disagree.

A "child custody dispute" means "any matter that relates to the custody of a child from the time the issue of custody arises until the child reaches the age of majority." *Phillips v Jordan*, 241 Mich App 17, 22 n 1; 614 NW2d 183 (2000). "The purposes of the Child Custody Act ["CCA"], MCL 722.21 *et seq.*, are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Merecki*, 336 Mich App at 645 (quotation marks and citation omitted). The CCA "governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *LeFever v Matthews*, 336 Mich App 651, 662; 971 NW2d 672 (2021). The CCA "is equitable in nature and must be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved." *Id*. (quotation marks and citation omitted).

The CCA "draws a distinction between physical custody and legal custody. . . ." *Merecki*, 336 Mich App at 647. "[T]he Legislature divided the concept of custody into two categories— custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *In re AJR*, 496 Mich 346, 361; 852 NW2d 760 (2014), superseded in part by statute as stated *In re AGD,* 327 Mich App 332, 342; 933 NW2d 751 (2019). "Physical custody pertains to where the child shall physically 'reside,' whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013).

"If the movant seeking to change custody . . . successfully establishes proper cause or a change of circumstances under the applicable legal framework, the trial court must then evaluate whether the proposed change is in the best interests of the child. . . ." *Lieberman v Orr*, 319 Mich App 68, 83; 900 NW2d 130 (2017). In this case, the trial court found proper cause or a change of circumstances existed with respect to LF1. Father does not challenge this on appeal. Instead, father argues that the trial court failed to make the requisite findings with respect to LF1's established custodial environment.

"Before making a custody determination, the trial court must determine whether the child has an established custodial environment. . . ." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020).

---

information on the record, then the trial court effectively deprives this Court of a complete factual record on which to impose the requisite evidentiary standard necessary to ensure that the trial court made a sound determination regarding custody." *Foskett*, 247 Mich App at 10-11. However, father does not argue the trial court considered the children's preferences outside of best-interest factor (i). Consequently, even if not abandoned, father would not be entitled to relief.

When a modification would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest. If the proposed change does not change the custodial environment, however, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010) (citations omitted).]

The clear and convincing evidence standard "also applies when there is an established custodial environment with both parents." *Foskett*, 247 Mich App at 6. If the trial court concludes "there [is] no established custodial environment," a "change in custody [is] justified if supported by a preponderance of the evidence." *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995).

Father is correct that the trial court did not make specific findings concerning LF1's established custodial environment. "Where a trial court fails to make a finding regarding the existence of a custodial environment, this Court will remand for a finding unless there is sufficient information in the record for this Court to make its own findings by de novo review." *Thames v Thames*, 191 Mich App 299, 304; 477 NW2d 496 (1991). Here, there is sufficient information in the record for this Court to make its own finding.

"[W]hether a custodial environment has been established is an intense factual inquiry." *Foskett*, 247 Mich App at 6. An established custodial environment is one in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger*, 277 Mich App at 706.]

The record establishes LF1's established custodial environment existed with Nicole, mother, and father. In February 2015, Nicole and Gregory were granted custody of LF1, who was five years old at the time. Nicole and Gregory, who died in June 2021, provided care to LF1 and for her material needs. Nicole and LF1 were bonded, and evidence supports mother and father were not a consistent presence in LF1's life for several years. However, as noted by the trial court, LF1 was exposed to instability in Nicole's home, and Pemberton expressed concern that Nicole did not care for LF1's emotional needs and development.

Nicole believed mother should regain custody of LF1 and essentially abandoned any argument that LF1 should remain in her custody. As a result, LF1 began to spend a significant amount of time with mother in the months leading up to the custody determination, and evidence supports LF1 and mother were bonded. Pemberton believed LF1 and father were also bonded and recommended LF1 participate in counseling and gradually be transitioned into father's full-time care and custody. This was the case because Pemberton had concerns about LF1's transition given the amount of time she had spent in the care of Nicole. Accordingly, because a preponderance of

-6-

the evidence establishes LF1 had an established custodial environment with mother and father, the proper standard of proof was clear and convincing evidence. See *Foskett*, 247 Mich App at 6. While father argues on appeal that the trial court failed to state the proper standard of proof, the trial court repeatedly referenced the standard of proof as clear and convincing evidence.

After the trial court identified the proper burden of proof, the court was required to consider the best-interest factors enumerated in MCL 722.23. *Lieberman*, 319 Mich App at 83. The best-interest factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

"A court need not give equal weight to all the [best-interest] factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Indeed, courts are "duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id*. (quotation marks and citation omitted). On appeal, father challenges the trial court's findings as to factors (d), (f), (g), (h), and (l), arguing they should weigh in his favor.

With respect to factor (d), LF1 had been in the care of Nicole for a vast majority of her life. LF1 spent a limited amount of time with father, and she had only recently begun spending a majority of her time with mother. Nicole wanted custody of LF1 to be transitioned to mother, who Nicole believed was capable of caring for LF1. Given LF1's circumstances, we fail to see how this factor could weigh in favor of father.

With respect to factor (f), which concerns the moral fitness of the parties, evidence was presented that father stopped consuming alcohol and completed services to address his issues with anger management, impulse control, and anxiety. Father also intended to continue participating in therapy with Gild. To support this, father testified on his own behalf, and Gild testified about father's improvement. Four of father's family members also testified about father's improvement, and Pemberton's testimony supported that father could manage his emotions. Mother did not offer as much evidence. Mother simply testified she stopped consuming illegal substances in January 2018, did not have criminal charges pending, and had improved her life.

On appeal, father argues this factor should have weighed in his favor. Father notes the trial court found he had presented more extensive evidence than mother concerning his efforts to "clean things up." While the trial court noted it did not have "as much information" concerning mother, the trial court also noted it did not have evidence to support that mother had issues with moral fitness. Indeed, father did not present evidence that mother continued to abuse substances or was engaged in criminal activity. The trial court noted it had not received "backup from other witnesses and other testimony other than the fact that [mother] ha[d] shown up, ha[d] been in the situation for a few years now. . . ." However, the trial court also found, between 2018 and 2019, that mother "maybe pulled things together enough where she could start being a more consistent presence." The trial court stated: "That's no better or no different than what [father] did." We fail to see how the trial court's finding that father had presented more evidence means that factor (f) should have weighed in his favor.

With respect to factor (g), which concerns the mental and physical health of the parties, father began participating in counseling with Gild in 2020. As of July 2022, father planned to continue seeing Gild and acknowledged he would require long-term counseling services. Father and Gild testified about his participation in therapy, and testimony supported father was physically healthy. Conclusory testimony established that mother was mentally and physically healthy. Although the trial court noted it did not have as much information about mother's health, the trial court also acknowledged it did not have evidence that mother's health was an issue. This was not against the great weight of the evidence as father did not admit evidence that mother suffered from mental health issues that would impact her ability to parent LF1. The fact that father presented more evidence concerning his mental health status does not support that this factor should weigh in his favor.

With respect to factor (h), which concerns the home, school, and community record of the child, Nicole and Gregory were granted sole custody of LF1 in February 2015. Therefore, Nicole and Gregory had decision-making authority concerning her education. See *Grange Ins Co of Mich*, 494 Mich at 511. As noted by the trial court, LF1's grades began to suffer immensely in 2020, at which time LF1 was still in Nicole's and Gregory's care. While testimony supports that father helped LF1 with homework during his Sunday parenting times, evidence also supports that mother brought LF1 to school and helped her with homework in the months leading up to the custody decision. The trial court did not state whether this factor weighed in favor of anyone, but the trial court acknowledged with respect to factor (d) that LF1 had been in Gregory's and Nicole's care for a vast majority of her life, where she was exposed to instability in the recent years. Because mother and father could not make decisions concerning LF1's education after the February 2015 custody order was entered, and because evidence supports that they both attempted to assist LF1 within the bounds of the February 2015 custody order, we fail to see how this factor could weigh in favor of father.

With respect to factor (l), which permits a trial court to consider any other relevant factor, the trial court expressed that the children needed to understand "what's going to happen for them," which was impacted by "their love for their caregivers, their history with the father which has been inconsistent at times," and the sense of stability the children had "in their current situation." The trial court noted that mother had already been "informally" reintroduced into LF1's day-to-day life. The trial court also noted father appeared to speak to the children about adult issues more than the other parties, which is supported by the record. The trial court referenced Pemberton's recommendation that LF1 be gradually returned to father's care. However, the trial court implied that it was giving limited weight to Pemberton's recommendation because she did not "have a good understanding of the history" between the parties, noting father's involvement had been "inconsistent at times" in the past. While the trial court did not expressly state which party or parties factor (l) favored, the trial court took LF1's need for stability into great consideration when deciding custody. It appears this factor favored mother because, as noted by the trial court, mother had begun to spend a considerable amount of time with LF1 and mother was granted sole physical custody. Given the facts of this case, we fail to see how factor (l) could have weighed in father's favor.

In sum, factors (a), (b), (c), (d), (e), (f), (g), (h), (j), and (k) did not favor mother or father. The trial court did not state whether factor (i) favored mother or father. However, the court's statement suggests LF1 expressed a preference, and the court considered the preference in making the custody determination. The trial court did not divulge LF1's preference, which was proper. See *Wilson v Gauck*, 167 Mich App 90, 97; 421 NW2d 582 (1988).[3] It appears that factor (l) favored mother.

With respect to the trial court's decision to award mother sole physical custody, father argues the best-interest factors did not overall favor mother. However, this argument ignores that,

---

[3] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

"[a]bove all, custody disputes are to be resolved in the child's best interests." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). The trial court determined it was in LF1's best interests to remain in mother's care for a majority of the time. This was based on the trial court's determination that it was in LF1's best interests to have stability, which had begun to form with mother. Indeed, in the months leading up to the custody determination, LF1 was often in mother's care and often stayed the night at her home. Relying on Pemberton's evaluation, which supported gradually transitioning LF1 to father's full-time care and custody, and on other evidence presented at the hearings, the trial court determined it would be in LF1's best interests to gradually spend more time with father through increased parenting time. The trial court also ordered LF1, mother, and father to participate in individual therapy to assist with the transition.

With respect to the trial court's decision to award mother and father joint legal custody, the trial court "shall determine whether joint custody is in the best interest of the child" by addressing the statutory best-interest factors in MCL 722.23 and whether "the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). "If two equally capable parents whose . . . relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children." *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted).

The trial court considered the best-interest factors and the facts and circumstances of this case. The trial court's decision to award joint legal custody was not an abuse of discretion. Father and mother testified that they were willing to work together to serve LF1's best interests. While mother and father have a tumultuous relationship and had difficulty getting along in the past, the evidence does not support their relationship was "irreconcilably broken down" to the point they would be "unable to cooperate and to agree generally concerning important decisions affecting the welfare of" LF1. This is not a case where father and mother have a long-standing acrimonious relationship where they constantly disagreed about important decisions concerning LF1 and where joint custody would cause LF1 harm. Cf. *Fisher v Fisher*, 118 Mich App 227, 233-234; 324 NW2d 582 (1982) (declining to "disturb the trial court's denial of joint custody" where "an award of joint custody would . . . be injurious to the children"). Instead, it appears father and mother have animosity toward each other as a result of the events that preceded the breakdown of their marriage. It appears mother and father will be able to work together in the future if they benefit from the therapy ordered by the trial court and they prevent other parties from interfering with their parenting relationship. Given the record evidence, father failed to establish by clear and convincing evidence that it was in LF1's best interests to grant him sole legal and physical custody. Clear and convincing evidence established joint legal custody was in LF1's best interests and sole physical custody with mother was in LF1's best interests. Given this conclusion, it is unnecessary to consider father's argument that the trial court's alleged errors were not harmless under MCR 2.613(A). See *Attorney General v Mich Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005) (generally this Court will not decide moot issues).

## V. THE TRIAL COURT'S CUSTODY DECISIONS WITH RESPECT TO LF2, BF, AND KF

Father argues the trial court abused its discretion when making its custody decisions concerning LF2, BF, and KF. We disagree.

As stated above, if the party seeking to change custody establishes proper cause or a change of circumstances, the trial court must determine whether the proposed change is in the child's best interests. *Lieberman*, 319 Mich App at 83. In this case, the trial court found proper cause or a change of circumstances existed, and father does not challenge this on appeal. Instead, father argues the trial court applied the incorrect burden of proof.

"[A]fter a movant first establishes proper cause or a change of circumstances warranting a change in custody, the trial court must then determine the relevant burden of persuasion before conducting the hearing." *In re Anjoski*, 283 Mich App 41, 54; 770 NW2d 1 (2009). "Generally, if a petition for a change in custody involves a parent and a third party, there is a strong presumption that awarding custody to the parent is in the child's best interests." *Id*. The "presumption is based on parents' fundamental due process liberty interest in the care, custody, and control of their children. The Legislature recognized this interest in MCL 722.25(1). . . ." *Id*. (citations omitted). Therefore, a third party seeking custody "must establish by clear and convincing evidence that it is not in the child's best interests under the factors specified in MCL 722.23 for the parent to have custody." *Hunter v Hunter*, 484 Mich 247, 265; 771 NW2d 694 (2009).

Father argues that the trial court failed to recognize the proper burden of proof was clear and convincing evidence and improperly stated the burden was on father to establish by clear and convincing evidence that granting him custody of LF2, BF, and KF was in their best interests. We disagree. Review of the record establishes that the trial court was aware of the parental presumption contained in MCL 722.25(1), and that Williamson and Heinz were required to establish by clear and convincing evidence that custody in their favor was proper.

Next, father argues Williamson and Heinz failed to establish by clear and convincing evidence that they were entitled to custody. In so arguing, father notes many of the best-interest factors weighed equally, and the trial court made favorable statements about father during its ruling. As stated above, the court need not give equal weight to all of the factors, but may consider the relative weight of each factor appropriate to the circumstances in light of the children's best interests. *Sinicropi*, 273 Mich App at 184. Indeed, "[a]bove all, custody disputes are to be resolved in the child's best interests." *Eldred*, 246 Mich App at 150.

The trial court determined that it was in BF's and KF's best interests to remain in Williamson's care for a majority of the time. BF and KF had been in Williamson's care for a vast majority of their young lives, and there is no dispute they were bonded with her. Indeed, they called Williamson "mom," and it was in BF's and KF's best interests to have stability. Relying on Pemberton's evaluation, which supported gradually transitioning them to father's full-time care and custody, and on other evidence presented at the hearings, the trial court determined it would be in BF's and KF's best interests to gradually spend more time with father through increased parenting time. The trial court also ordered BF, KF, Williamson, mother, and father to participate in individual therapy to assist with the transition. The trial court properly found Williamson rebutted the parental presumption by clear and convincing evidence and that sole custody with father was not in BF's and KF's best interests as of July 2022.

The same logic applied to LF2, who had been in Heinz's care for a vast majority of her life. There is no dispute LF2 and Heinz were bonded, and LF2 required stability. Additionally,

similar to BF and KF, Pemberton recommended gradually transitioning LF2 to father's full-time care and custody. Based on this and other evidence presented at the hearings, the trial court determined it would be in LF2's best interests to gradually spend more time with father through increased parenting time. The trial court also ordered LF2, Heinz, mother, and father to participate in individual therapy. The trial court properly found Heinz rebutted the parental presumption by clear and convincing evidence and that sole custody with father was not in LF2's best interests as of July 2022.

In sum, the trial court did not abuse its discretion. Importantly, unlike cases involving termination of parental rights, which require the balancing of the best interests of the children with a parent's constitutional rights, the CCA requires trial courts to focus on the children " 'to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes.' " *Lieberman*, 319 Mich App at 78, quoting *Pierron*, 282 Mich App at 243. Given this conclusion, it is unnecessary to consider father's argument that the trial court's alleged errors were not harmless. See *Attorney General*, 269 Mich App at 485 (generally this Court will not decide moot issues).

The custody orders being appealed in Docket Nos. 362619, 362620, and 362622 are affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Stephen L. Borrello