*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF MACOMB COUNTY TREASURER FOR FORECLOSURE.

---

MACOMB COUNTY TREASURER,

      Petitioner-Appellee,

v

ANNAMARIE BUTTERWORTH,

      Respondent-Appellant,

and

BANYON INVESTMENTS, LLC,

      Intervening-Respondent-Appellee.

FOR PUBLICATION
March 18, 2026
2:05 PM

No. 367856
Macomb Circuit Court
LC No. 2021-002014-CH

---

Before: RIORDAN, P.J., and WALLACE and TREBILCOCK, JJ.

RIORDAN, P.J.

-1-

In this tax-foreclosure case under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, respondent-appellant Annamarie Butterworth[1] appeals by leave granted[2] the trial court's August 30, 2023 order granting the motion of respondent-appellee Banyon Investments, LLC, to intervene in the case. On appeal, appellant argues that the trial court erred by allowing appellee to intervene under MCR 2.209. Appellee argues otherwise. Petitioner-appellee Macomb County Treasurer, representing the foreclosing governmental unit (FGU), has filed a brief on appeal as well, urging this Court to uphold the order granting intervention. After careful consideration of the parties' respective arguments, however, we reverse the trial court and remand to that court for further proceedings.[3]

## I. FACTS

The general facts of this case are undisputed and involve MCL 211.78t of the GPTA, which governs surplus proceeds following a tax-foreclosure sale of a residential property in the City of Warren. In early June 2021, petitioner filed its petition for tax foreclosure in the trial court, seeking to foreclose upon each specifically-identified "parcel of property which remains unredeemed after forfeiture to the Macomb County Treasurer on March 1, of this year, or forfeited in prior years . . . ." One of the properties listed was the subject property at issue in this case.

In 2015, appellant purchased the subject property in Warren for $65,450. The purchase was partially financed through a loan in the amount of $49,600 from Insiders Cash, LLC. Insiders Cash recorded a mortgage and, in July 2018, assigned its mortgage interest to appellee. Appellee promptly recorded its interest. However, appellant failed to pay taxes on the subject property for a few years. As a result, as noted, petitioner initiated foreclosure proceedings in June 2021, which resulted in a tax-foreclosure judgment against the subject property in February 2022.[4]

In June 2022, appellant provided petitioner with her "Form 5743" under MCL 211.78t of the GPTA, which gave petitioner notice of her intent to claim any surplus proceeds from the upcoming foreclosure sale. As the deadline under MCL 211.78t(2) to submit the Form 5743 was

---

[1] Specifically, appellant is the trustee of American Estate & Trust FBO Annamarie Butterworth IRA. For ease of discussion, we refer to appellant as a natural person, notwithstanding that she generally acted on behalf of that legal entity.

[2] *In re Petition of Macomb Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered February 16, 2024 (Docket No. 367856).

[3] For ease of discussion, we refer to Butterworth as "appellant," Banyon Investments as "appellee," and the Macomb County Treasurer as "petitioner."

[4] "Under MCL 211.78k(6), fee simple title vest[s] absolutely in the Treasurer at the time of foreclosure, extinguishing all liens and existing interests in the property except as provided in MCL 211.78k(5)(c) and (e)." *Petersen Fin, LLC v City of Kentwood*, 337 Mich App 460, 471-472; 976 NW2d 691 (2021). In this case, the foreclosure judgment was entered on February 4, 2022; appellant did not pay the delinquent taxes and related fees by March 31, 2022, as permitted by MCL 211.78k(5)(c); and the various exceptions set forth in MCL 211.78k(5)(e) do not apply. Thus, appellee no longer had any legal interest in the property by March 31, 2022, at the latest.

July 1, 2022, it was timely submitted. In the Form 5743, appellant falsely indicated that there were no "other interests in this property, which were in effect immediately prior to foreclosure." In September 2022, the subject property sold at auction for $53,001.

On May 15, 2023, appellant filed a timely motion to claim the surplus proceeds from the foreclosure sale as required by MCL 211.78t(4).[5] In the motion, appellant explained that the subject property sold for $53,001.00, that the amount of unpaid taxes and other related fees was $10,495.37, that petitioner was statutorily entitled to a 5% commission in the amount of $2,650.05, and that she was therefore entitled to surplus proceeds of $39,855.58.

Appellee did not file a Form 5743, which was due by July 1, 2022, or file a motion to claim surplus proceeds, as appellant did in May 2023. Instead, on July 21, 2023, appellee filed a motion to intervene in the proceedings. In the motion, appellee alleged as follows:

> ¶ 7. On or about May 18, 2023, Banyon received a letter from the Macomb County Treasurer's office indicating that the Property had been sold and that as assignee of a mortgage that was not discharged on the Property, Banyon may be entitled to surplus from the auction.
>
> ¶ 8. Unbeknownst to Banyon, on May 12, 2023, Claimant Annamarie Butterworth ("mortgagor") filed a motion to claim the surplus falsely asserting the Property was not encumbered by a lien or other security interest at the time of Judgment of Foreclosure which was untrue as she executed the mortgage in 2014 divesting all interest in the property.
>
> ¶ 9. Claimant falsely alleges in her pleading that she is entitled to surplus proceeds of $39,855.58 and submitted a false Notice to Claimant with the Circuit Court with the intent to collect the proceeds by not disclosing her outstanding mortgage on the Property.
>
> ¶ 10. Banyon asserts it has a right to intervene pursuant to MCR 2.209(A) because it claims an interest in the Property or transaction which is the subject of the action and is so situated that disposition of the action may as a practical matter impair or impede its ability to protect and collect on its assignment. Banyon's interests are not adequately represented by the existing parties since each existing party is only interested in its own claim for money.
>
> ¶ 11. Alternatively, Banyon may intervene pursuant to MCR 2.209(B) because its claim and the main action have questions of law and fact in common, for example, the priority of the claims of the various parties.
>
> ¶ 12. Contemporaneously with the filing of this motion, Banyon will seek equitable subrogation through its intervening complaint for breach of contract involving debt owed by the Claimant to Banyon pursuant to the Standard Mortgage

---

[5] The motion was signed on May 12.

Clause in the mortgage which specifically provides that in such case of default, "The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender." [Citations omitted.]

Accompanying the motion was a proposed complaint, alleging that "[u]nder the terms of the Mortgage, Banyon is entitled to equitable subrogation for Claimant's default involving debt owed by the Claimant to Banyon," and "Banyon is entitled to subrogate in place of the Claimant for default and surplus proceeds should be rightfully distributed to Banyon and not Claimant."

In August 2023, petitioner filed a response to the motion to intervene, urging the trial court to grant the motion to determine the proper recipient of the surplus proceeds. Appellant filed a response as well, arguing that the trial court should deny the motion because appellee did not have a property interest in the surplus proceeds, as it failed to comply with MCL 211.78t. Thus, appellant argued, appellee failed to satisfy the requirements for intervention by right under MCR 2.209(A) or permissive intervention under MCR 2.209(B).

At the August 21, 2023 motion hearing, counsel for appellee represented that appellee "did receive notice from the county of potential surplus on the property." However, counsel explained, she was not sure at that time whether appellee received notice of the underlying foreclosure proceedings:

The one piece that I don't know for sure, and I need to flush out with my client, is a little bit whether or not they received timely notice of the foreclosure action itself. So that is still a question mark.

Even so, we didn't receive --

My client didn't receive a letter related to the surplus itself until May 18 of 2023 well past the July 1st deadline. So there was --

At that point, the trial court said that it would grant the motion to intervene and set a date for an evidentiary hearing.[6]

---

[6] MCL 211.78i(1) requires the FGU to "initiate a search of records . . . to identify the persons with a property interest in the property entitled to notice [of] . . . the foreclosure hearing under [MCL 211.78k]." Thus, it appears that petitioner should have provided appellee with timely notice of these proceedings. However, it is unclear whether appellee timely received notice of these foreclosure proceedings, such that it would have been able to comply with the various requirements in MCL 211.78t. At a May 30, 2023 hearing, petitioner represented that "it's undisputed Mr. Banyon received a copy of the notice of the tax foreclosure hearing, which also included the notice that he needs to file a Notice of Intent to Claim Proceeds, and he didn't do so." On the other hand, as noted, counsel for appellee represented at the August 21, 2023 motion hearing that she was not certain whether appellee received such notice. The parties' respective briefs on appeal are silent regarding this matter.

Later that month, the trial court entered its written order providing that "Banyon Investment, LLC's Motion to Intervene is Granted." Appellant filed an application for leave to appeal from that interlocutory order, arguing that the trial court erred by allowing appellee to intervene because appellee's asserted lien interest was extinguished when it failed to comply with the provisions of MCL 211.78t governing surplus proceeds. Thus, according to appellant, appellee had no recognized legal interest in the instant proceedings. This Court granted the application for leave to appeal. *In re Petition of Macomb Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered February 16, 2024 (Docket No. 367856).

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's resolution of issues of law, including the interpretation of statutes and court rules." *State Treasurer v Bences*, 318 Mich App 146, 149; 896 NW2d 93 (2016) (quotation marks and citation omitted). "A trial court's decision on a motion to intervene is reviewed for an abuse of discretion." *Id*. (quotation marks and citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Auto-Owners Inc Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009) (quotation marks and citation omitted).

## III. DISCUSSION

Appellant argues that the trial court abused its discretion by granting appellee's motion to intervene because appellee has no legal interest in the instant proceedings. According to appellant, appellee's mortgage lien was extinguished by operation of the GPTA because appellee failed to timely comply with the provisions of the GPTA governing surplus proceeds. Appellee responds that it was entitled to intervene because "[t]he intervention in the instant action is a claim against [appellant], not a claim against the mortgage on the property. The covenant to collect the proceeds against [appellant] through subrogation of its rights to [appellee] remains and gives [appellee] standing to intervene." Petitioner similarly argues that the trial court properly granted appellee's motion to intervene, reasoning that appellant "is obligated to use the [surplus] proceeds to pay [appellee] pursuant to the terms of the mortgage." Petitioner emphasizes that appellant "falsely stat[ed] under oath there were no other interests in the property prior to the foreclosure," which seemingly led to the instant dispute. While we acknowledge the concerns raised by appellee and petitioner, we ultimately agree with appellant.[7]

In 2020, our Supreme Court held that under Const 1963, art 10, § 2, "former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 484; 952 NW2d 434 (2020). See also *Tyler v Hennepin Co, Minnesota*, 598 US 631, 647; 143 S Ct 1369; 215 L Ed 2d 564 (2023) (holding that the county's retention of surplus proceeds violated the federal Takings Clause). In response to *Rafaeli*, our Legislature enacted 2020 PA 256, which added MCL 211.78t to the

---

[7] As noted, appellee cited both MCR 2.209(A) and (B) in its motion to intervene. However, the trial court simply stated that it would grant the motion at the August 21, 2023 motion hearing, and its written order did not specify a subrule. Therefore, we will address both subrules in our opinion.

GPTA. "MCL 211.78t creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Schafer v Kent Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164975 and 165219), slip op at 35. In *In re Kent Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket Nos. 363463, 363766, 363808, and 364114), slip op at 4, this Court summarized the operation of MCL 211.78t as follows:

> Property owners whose properties sold at tax-foreclosure sales after July 17, 2020, the date the *Rafaeli* decision was issued, and who intend to recover any surplus proceeds from the sale are required to notify the FGU of their intent by submitting a "Notice of Intention to Claim Interest in Foreclosure Sales Proceeds" (Treasury Department Form 5743) by the July 1 immediately following the effective date of the foreclosure of their properties. Form 5743 must be notarized and filed with the FGU by personal service acknowledged by the FGU or by certified mail, return receipt requested. Property owners who satisfy these requirements are "claimants."[8]

> In the January immediately following the sale or transfer of foreclosed properties, the FGU notifies claimants about the total amount of remaining proceeds or the amount of shortfall in proceeds, among other things. The notice also instructs claimants that they must file a motion in the circuit court in the foreclosure proceeding to recover any remaining proceeds payable to them. This motion must be filed between February 1 and May 15 of the year immediately following the tax-foreclosure sale.

> At the end of this claim period, the FGU responds by verifying that claimants timely filed Form 5743 and identifying any remaining proceeds. The circuit court then holds a hearing to determine the relative priority and value of the claimants' interests in any remaining proceeds. After requiring the payment of a sales commission to the FGU of 5% of the amount for which the property was sold, the trial court then allocates any remaining proceeds based on its determination of priority, and orders the FGU to pay the remaining proceeds to claimants in accordance with the trial court's determination. The FGU has 21 days to pay the amounts ordered by the trial court. [Cleaned up.]

Moreover, "[u]nder MCL 211.78k(6), fee simple title vest[s] absolutely in the Treasurer at the time of foreclosure, extinguishing all liens and existing interests in the property except as

---

[8] MCL 211.78t(12)(a) provides that " '[c]laimant' means a person with a legal interest in property immediately before the effectiveness of a judgment of foreclosure of the property under [MCL 211.78k] who seeks pursuant to this section recognition of its interest in any remaining proceeds associated with the property." In this case, as explained *infra*, appellee was not a "claimant" under MCL 211.78t because, although it had a legal interest in the subject property before foreclosure, it did not comply with the provisions of that statute to actually claim the surplus proceeds. Thus, appellee might best be characterized as a "putative claimant."

provided in MCL 211.78k(5)(c) and (e)." *Petersen Fin, LLC v City of Kentwood*, 337 Mich App 460, 471-472; 976 NW2d 691 (2021).

With regard to intervention, MCR 2.209 provides, in relevant part:

> **(A) Intervention of Right.**  On timely application a person has a right to intervene in an action:
>
> * * *
>
> (3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> **(B) Permissive Intervention.**   On timely application a person may intervene in an action
>
> * * *
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"[I]ntervention may not be proper where it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Precision Pipe & Supply, Inc v Meram Constr, Inc*, 195 Mich App 153, 157; 489 NW2d 166 (1992).  In addition, "[a]s a general rule, the right to intervene should be asserted within a reasonable time.  Laches or unreasonable delay by the intervenor is a proper reason to deny intervention." *American States Ins Co v Albin*, 118 Mich App 201, 209; 324 NW2d 574 (1982).  Further, a proposed intervenor must have standing.  See *In re Anjoski*, 283 Mich App 41, 52 n 4; 770 NW2d 1 (2009); *Karrip v Cannon Twp*, 115 Mich App 726, 732; 321 NW2d 690 (1982).  "[A] litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 972 NW2d 686 (2010).

In this case, as noted, a "claimant" in the context of MCL 211.78t is not limited to property owners.  Rather, a claimant is instead defined as "a person with a legal interest in property immediately before the effectiveness of a judgment of foreclosure of the property under [MCL 211.78k] who seeks pursuant to [MCL 211.78t] recognition of its interest in any remaining proceeds associated with the property." MCL 211.78t(12)(a).  A mortgage constitutes a lien on the property, *Prime Fin Servs LLC v Vinton*, 279 Mich App 245, 256; 761 NW2d 694 (2008), and a lien is definitionally a "legal right or interest that a creditor has in another's property . . . ." *Black's Law Dictionary* (11th ed.).  Consequently, a mortgagee may qualify as a person with a legal interest in the property immediately before the foreclosure, meaning that a mortgagee can be a claimant of surplus proceeds under the GPTA.  However, contrary to appellee's suggestion that

it is a claimant through appellant by virtue of a contractual assignment in the mortgage document itself, a party's status as a claimant is a personal right that generally is not transferable. MCL 211.78t(11) ("A right to claim remaining proceeds under this section is not transferable except by testate or intestate succession."). Therefore, appellee's potential status as a claimant arose from its interest in the subject property immediately before foreclosure under the GPTA, not from any purported assignment by appellant in the mortgage.

Appellee has not, however, attempted to pursue its status as a claimant under the GPTA. Indeed, appellee failed to comply with MCL 211.78t in two respects. First, as explained, MCL 211.78t requires a claimant to submit a Form 5743 to the FGU by the July 1st immediately following the effective date of the foreclosure, which in this case was July 1, 2022. See MCL 211.78t(2). Here, appellant timely filed her Form 5743 before that date. Appellee did not file a Form 5743. Second, although the deadline for a motion to claim proceeds was May 15th, 2023, see MCL 211.78t(4), appellee did not file such a motion. Instead, appellee attempted to intervene on July 21, 2023. As written, MCL 211.78t sets forth the exclusive mechanism for claiming some or all of the surplus proceeds when the trial court divides those proceeds under MCL 211.78t(10). See MCL 211.78t(11) ("This section is the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state."); *Schafer*, ___ Mich at ___; slip op at 35 ("MCL 211.78t creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds."). MCL 211.78t makes no provision for, essentially, a third-party claim against a claimant who has followed the procedures in MCL 211.78t. In other words, the only issue before the trial court is the distribution of the surplus proceeds, and the exclusive means for distributing those proceeds is detailed in MCL 211.78t. Therefore, claims such as equitable subrogation are not a permissible means to obtain a share of surplus proceeds being distributed under MCL 211.78t. See MCL 211.78*l*(1) ("An action to recover any proceeds from the sale or transfer of property foreclosed for nonpayment of real property taxes under this act must be brought as provided under [MCL 211.78t.]").[9]

---

[9] We acknowledge the competing concerns in this matter and respectfully encourage the Legislature to consider amending the GPTA if it finds that the current version of the GPTA is insufficient to address these concerns.

On one hand, the foreclosure process and the distribution of surplus proceeds is intended to be an efficient and streamlined process. That is, the foreclosure process in the GPTA is intended to encourage "the efficient and expeditious return to productive use of property returned for delinquent taxes." MCL 211.78(1). More relevant to the issues in this case, in response to due-process challenges to the procedures and timeframes in MCL 211.78t, this Court has recognized that there is a government interest "in having taxes paid in full as well as clarifying within a reasonable time period who has the right to any surplus from forfeited properties." *In re Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678, 696; 20 NW3d 337 (2023). In other words, the procedures in MCL 211.78t are designed to allow for the efficient resolution of claims to surplus proceeds. Allowing intervention after the time for filing a motion to claim proceeds has passed and allowing third-party claims not contemplated by MCL 211.78t does not appear to aid in the expeditious resolution of the FGU's obligation to distribute surplus proceeds to claimants.

For these reasons, we conclude that appellee was not entitled to intervene by right under MCR 2.209(A)(3), as it did not have "an interest relating to the property or transaction which is the subject of the action." In other words, appellee does not have a legally protected interest in the surplus proceeds. See *United States v Union Electric Co*, 64 F3d 1152, 1161 (CA 8, 1995) (explaining that for intervention by right, "that interest must be recognized, *i.e.*, both substantial and legally protectable") (quotation marks and citations omitted). Again, appellee's lien interest was extinguished by the foreclosure in February 2022 pursuant to MCL 211.78k(6), see *Petersen*, 337 Mich App at 471-472, and appellee failed to comply with the provisions of MCL 211.78t for claiming surplus proceeds. Moreover, because the only issue remaining before the trial court was simply the distribution of surplus proceeds to appellant under MCL 211.78t(10), appellee's legal claims against appellant, such as equitable subrogation, did not have "a question of law or fact in common" with the instant proceedings for the purposes of MCR 2.209(B)(2).

Simply put, the surplus-funds claims process is a unique process with specific procedures. It is not intended for resolution of third-party claims by parties not entitled to proceeds under MCL 211.78t. Compare *Bences*, 318 Mich App at 153 (concluding that an ordinary creditor could not intervene in a lawsuit involving the State Correctional Facility Reimbursement Act because ordinary creditors were not entitled to the benefit of "the unique statutory tools" available to the state under the act).

With that said, we note the possibility that appellee may attempt, if it chooses, to sue appellant to collect an outstanding debt. As a lien against the subject property, appellee's mortgage was extinguished by the foreclosure. See MCL 211.78k(5)(c). However, the note evincing appellant's debt was not extinguished and, depending on the terms of the note, appellee could potentially pursue a judgment against appellant based on the note. See *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership*, 295 Mich App 99, 109; 812 NW2d 799 (2011). See also *Tyler*, 598 US at 637 (noting that the taxpayer's debts were not extinguished by a tax sale and that the borrower remained personally liable for debts). Nonetheless, any dispute regarding the note and appellant's debt to appellee is between those two parties. It does not involve petitioner, and it does not directly entitle appellee to the surplus proceeds at issue here under MCL 211.78t. In other words, given that the mortgage has been extinguished, appellee is, at best, an unsecured creditor, but the fact that appellant may be indebted to appellee does not provide appellee grounds to intervene in a post-foreclosure action involving the distribution of surplus proceeds under MCL 211.78t when appellant has no claim to those proceeds because it failed to abide by MCL 211.78t. See 59 Am Jur 2d, Parties, § 181 ("It is well settled that a mere creditor of one of the parties has no right to intervene although that party may have an indirect interest in the result of the action."); 67A CJS, Parties, § 105 ("The mere fact that a party, for or against whom a judgment may go, may become more or less able to satisfy some obligations will not entitle its creditor to intervene in the

On the other hand, apparently appellant falsely represented in her Form 5743 that there were no other interests in the subject property. This representation was either mistaken or fraudulent. While the record is unclear about whether this false representation ultimately resulted in petitioner's potential failure to timely notify appellee about these proceedings, that is a possibility. If so, it strikes us as an incongruent outcome that appellee would be unable to avail itself of the surplus proceeds, and that appellant would be rewarded for her false representation.

action."); *McBride v Wayne Circuit Judge*, 250 Mich 1, 4; 229 NW 493 (1930) (finding no provision to allow intervention by nonjudgment creditors).

## IV. CONCLUSION

Because MCL 211.78t sets forth the exclusive mechanism for recovering surplus proceeds, and because appellee failed to comply with that statute, it does not have a cognizable interest in the instant proceedings. Therefore, the trial court legally erred by allowing appellee to intervene in these proceedings. Accordingly, we reverse the trial court and remand to that court for further proceedings consistent with our opinion.[10] We do not retain jurisdiction.[11]

/s/ Michael J. Riordan
/s/ Randy J. Wallace
/s/ Christopher M. Trebilcock

---

[10] Our opinion should not be understood as having any preclusive effect, such as res judicata, regarding a possible contract action by appellee in the future.

[11] In addition to her arguments regarding intervention, appellant briefly argues that the trial court lacked jurisdiction over appellee's legal claim. However, the order granting the application for leave to appeal was "limited to the issues raised in the application and supporting brief," see *In re Petition of Macomb Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered February 16, 2024 (Docket No. 367856), and appellant did not raise the jurisdictional issue in her application. In any event, we briefly note that the trial court likely had jurisdiction to entertain appellee's motion to intervene before disbursing the surplus proceeds. See MCL 600.611 ("Circuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments.").